RING, Appellant, vs. DEVLIN and another, Respondents.

*February 8 — March 1, 1887.*

*Officers: Superintendent of county asylum: Reward for return of escaped lunatic.*

The overseer or superintendent of a poor-house and county asylum cannot recover the reward offered for the return of an insane person, who has escaped from another asylum and has been placed,

by the authorities of a town into which he wandered, in the asylum of which such overseer has charge; and a promise to pay such reward to him, and a guaranty of such promise, are without consideration.

- APPEAL from the Circuit Court for *Fond du Lac* County. The facts are sufficiently stated in the opinion.

For the appellant the cause was submitted on the brief of *C.-S. Matteson.*

*Alex. Wilson,* for the respondents.

ORTON, J. The complaint states substantially the following facts: In 1881 the respondent *Edward Devlin* was appointed by the county judge of Iowa county guardian of one Frank J. Rowe, an insane person, resident of said founty, and sometime thereafter, and previous to the 3d day of December, 1885, he placed said insane person in the Milwaukee county insane asylum at Wauwatosa, for treatment and safe-keeping, and at said last-mentioned date said insane person escaped therefrom and could not be found or his whereabouts ascertained. On the 17th day of December thereafter the said *Devlin* published in the *Milwaukee Sentinel* an offer of a reward of $300 to any person who would return said insane person to said insane asylum, and gave a description of his person. On the 12th day of December, 1885, an unknown demented person was sent to the Fond du Lac county poor-house by the authorities of the town of Metomen, of said county, and the appellant, the plaintiff in this suit, was at the time the overseer of said poor-house and county asylum of the county of Fond du Lac, and he wrote numerous letters to the authorities of insane institutions in different parts of the state, describing said insane person, with a view of locating his proper abode. On the 18th day of December, 1885, R. M. Wigginton, the superintendent of the Northern Hospital for the Insane, in Winnebago county, wrote to the plaintiff in

response to a former communication from him, and enclosed a postal card, signed by the defendant *Edward Devlin*, containing the offer of said reward of $300 for the return of said insane person as aforesaid, arid an accurate description of his person, and on the 21st day of said month the plaintiff returned said insane person to the said Wauwatosa asylum, and the said defendant *Devlin* on the same day promised to pay the plaintiff said reward, but on a subsequent demand he has refused to do so. On the 19th day of said month of December the defendant *Louis A. Lange* guarantied the payment of said reward to the plaintiff upon the delivery of said insane person to said Wauwatosa hospital. The plaintiff was put to great trouble and expense in locating and so delivering said insane person. Judgment for said $300 and costs is demanded. To this complaint the circuit court sustained a demurrer, presumably on the ground that it did not state facts sufficient to constitute a cause of action, and this appeal is taken from said order.

The complaint is very indefinite, vague, and uncertain as to the legal character of the institution, called in the first place a " poor-house," and in the second place a " poor-house and county asylum," and as to the name and duties of the officer in charge of it, who is called in the first place "*overseer* of the poor-house," and in the second place " overseer of the poor-house and county asylum," and, in the brief of plaintiff's counsel, " *superintendent* and *keeper* of the poor-house and asylum." It cannot be known by the complaint what particular official relations the plaintiff bore to this insane person, or what his special duties were as his keeper in the institution under his charge. In deciding, therefore, upon the question whether the complaint states a cause of action, we must do so upon probabilities and legal presumptions mainly, and in view of the statutes which govern a poor-house as such, and an insane asylum as such, of the county of Fond du Lac, and which prescribe the

duties of the officer specially and personally in charge of either one or the other. We shall not cite the particular statutes upon the subjects, but assume what their effect must necessarily be in application to the facts stated in the complaint. We shall therefore assume (1) that the authorities of the town of Metomen, of Fond du Lac county, had lawful authority to transfer this insane person to the county poor-house or asylum; (2) that he was thereafter to be *safely kept* and properly cared for in said institution, until he was discharged therefrom or transferred to the Wauwatosa hospital by lawful authority and according to law; (3) that the plaintiff, as the officer in charge of said poor-house and said insane person therein, had lawful authority to hold, keep safely, and detain said insane person within said institution, and discharge such duties in relation to him therein as the law prescribes; (4) that this insane person could not be discharged, let out, or so transferred, except in some way and manner prescribed by law, of which a record is presumed to have been duly kept; (5) that the plaintiff, as such officer and keeper, must in all cases act not only officially but most strictly according to law in letting out, discharging, or transferring such insane person, and be able to justify the same by law and by his record; (6) that the plaintiff had no right as such keeper to allow any private person, without some legal authority or direction, to let out, release, discharge, or transfer such insane person from said institution, or aid, counsel, advise, or abet the same; (7) that said plaintiff, while so in charge of said institution and said insane person therein, as overseer or keeper thereof, had no right to enlarge, release, discharge, or transfer said person from the same as a mere *private* person, or unofficially; (8) that said plaintiff, either officially or unofficially, had no right to the custody of said insane person, or to take or carry him from place to place, or hold or take care of him outside and beyond the lawful limits of said institution, without

special and lawful authority conferred by some statute or judicial order or direction.

The learned counsel of the appellant claims the right of the plaintiff to this reward only because he acted as a *private* person and not as an *officer*, and that as an officer he admits he had no right to perform these acts. He says in his brief that "neither is there any *common law* requiring superintendents of such institutions to arrest and return escaped lunatics and paupers to institutions over which they have no authority or control." We most fully agree with the learned counsel in this, and he might as well have added that he had no right to be absent from his proper place as such keeper, and spend time the law devotes to such public uses and services, and compensates him therefor, in carrying such demented persons about the state. The reasoning of the learned counsel would lead to this: that the plaintiff had no right as an officer to do these high-handed and unauthorized acts; but that he could lay aside and utterly neglect his official duties as keeper or overseer, leave the institution in his charge without a keeper, lay aside his robes and insignia of office, or vacate his office for a time and transform himself into a *private* person, let out or take out of the institution the lawful inmates thereof, and carry them about the state for rewards or for any other purpose. Let us see how this thing would work. Richard Ring, as *keeper*, *overseer*, and *superintendent* of the poor-house and asylum, delivers over to Richard Ring, a *private* person, one of the inmates of the institution, lawfully detained and kept therein, and allows *him* to take him away and carry him a long distance and place him in another institution for a $300 reward. Richard, the *officer*, is not influenced or corrupted by any sordid motive of reward, for he ought not to be; but Richard, the *private*, is so influenced and has the right to be. Richard, the officer, receives a postal card containing the offer of a reward of $300 if he will take out of his insti-

tution one of the inmates and carry him away and deliver him to some one else or to some other institution. He reasons with his conscience and with the law thus: "As an *officer* I cannot, *dare* not, do this thing; but as a *private* person I can and dare; therefore I will do it as a *private* person." As a private person he has not the least right or authority to do any such thing. Would it not be *kidnaping*, within sec. 4387, R. S., for him to do so? It is very clear by the admission of the learned counsel himself, and by the authorities, that he had no such right in either capacity.

The learned counsel of the appellant further admits, and such is clearly the law, that "the Revised Statutes of Wisconsin do not require the superintendent of a county poorhouse or asylum to arrest and return any person escaping from any poor-house or asylum in the state, other than the one over which he has supervision, and then *only when authorized by rules and regulations adopted by the board of supervisors of the county having jurisdiction of such superintendent.*" And he further admits "that an offer of reward to a public officer to do what it is his legal duty to do without such reward, is contrary to public policy, and cannot be enforced." *Hatch v. Mann,* 15 Wend. 44; *Pool v. Boston,* 5 Cush. 219; *Preston v. Bacon,* 4 Conn. 471. If, then, such officer has no right to receive such reward for doing what it is his duty to do, and it would be against public policy for him to do so, so much less has he the right to receive a reward, and so much more would it be against public policy for him to do what it was not only *not* his duty to do but in violation of his duty and the law for him to do either as an officer or as a private person; and this rule he also admits in the above quotation and makes it emphatic. It follows most conclusively that the plaintiff shows by his complaint that he has no right to recover. The promise of the defendant *Devlin* and the guaranty of

the defendant *Lange* rest upon this void and illegal consideration, and are clearly void. If the plaintiff is not entitled to the reward, he, of course, is not entitled to recover it from *any one*. The demurrer was properly sustained.

*By the Court.*— The order of the circuit court is affirmed, and the cause is remanded for further proceedings according to law.