## SULLIVAN, Respondent, *v.* UTAH AND NORTHERN RAILWAY COMPANY, Appellant.

[Argued October 16, 1891.   Decided November 23, 1891.]

Sheriffs—*Duties*—*Fees.*—A railroad company is liable for money paid by a sheriff personally to men employed by him, and sworn in as deputy-sheriffs to protect the property of the company from damage apprehended from strikers, upon its express promise to pay for such services, after having been informed by the sheriff that he was able to command the peace without the aid of the *posse comitatus,* and that, if the men in question were employed, the county would not pay them, there being at the time no riotous or unlawful assembly; and in such case section 856, fifth division of the Compiled Statutes, in substance, empowering a sheriff to call to his aid such persons as may be necessary to suppress unlawful assemblies, and section 864, fifth division of the Compiled Statutes, prohibiting a sheriff from demanding for official services any greater fees than are allowed by law, are not available as a defense to the action.

*Appeal from Second Judicial District, Silver Bow County.*

Action to recover money expended for the use of the defendant. The cause was tried before McHatton, J.   Plaintiff had judgment below.

*J. S. Shropshire,* for Appellant.

The plaintiff sues upon an agreement which the defendant contends is void as against public policy. A sheriff or any public officer has no more right to claim extra compensation for his deputies than he would if he himself had performed the services. If there is no fee specially provided by law for the performance of any particular service, then the officer is entitled to nothing for performing that service, provided the service be one that is enjoined by law. The service required by the officer in this case was to command and keep the peace, which is specially enjoined by the statutes of this State. The policy of the law forbids a public officer, or those called to aid him in the discharge of a public duty, receiving any reward or compensation for their services outside of that allowed by law. (Greenhood on Public Policy, 328; *Converse* v. *United States,* 21 How. 463; *Richardson* v. *Crandall,* 48 N. Y. 348; *Spence* v. *Harvey,* 22 Cal. 337; 83 Am. Dec. 69; *Ring* v. *Devlin,* 68 Wis. 384; *Kick* v. *Merry,* 23 Mo. 72; 66 Am. Dec. 658; *St. Louis etc. Ry. Co.* v. *Grafton,* 51 Ark. 504; 14 Am. St. Rep. 66; *Hatch* v. *Mann,* 15 Wend. 45.)

If the foregoing authorities are in point, then there can be no question as to what should be the result of this case. The testimony is certainly insufficient to support the verdict, and reading of the whole of it will show that this demand of the officer was made as a condition precedent to his taking, what the officials of the railroad company deemed, the necessary steps to preserve the peace. If a public officer may make a demand such as was made by the plaintiff in this case before he will consent to do a plain public duty, then the reasons upon which are founded the authorities cited fail utterly, and the authorities can have no weight in a case of this kind. The agreement sued upon was exacted by the sheriff *colore officii,* and being unauthorized by law, was void as against public policy.

*William Scallon,* for Respondent.

It is clear upon the evidence in this case, which stands uncontradicted, that this was not a case calling for the powers of the county, or for any action beyond vigilance on the part of the peace officers; and that none of the men employed could have been compelled to serve as a posse, or have been punished for refusing to serve, if called upon. There was so little apparent danger, and so little apprehension of any overt act, that the company's officers objected for some time to Sullivan's proposition to exclude the outsiders and onlookers, or public, from the company's grounds, or to keep out the strikers. These men were employed and paid by Sullivan at the express request and direction of the company's officers, and with a full understanding that they were hired on the company's responsibility, and that their services were to be paid for by the company.

We therefore submit, that the respondent did not refuse to do his duty, and is not suing for a reward or compensation for having done his duty, and that the so-called deputies were not required by law to act; that, therefore, the respondent and the men employed did something outside of and beyond his duty as an officer and their duty as citizens, and more than they were required by law to do, and for the private benefit of the defendant; and that, under the agreement, the plaintiff is entitled to recover.

Greenhood on Public Policy (p. 334, rule 277), says: "But a promise to pay a public officer for doing more than the law requires of him is valid." And on page 332 the same author, speaking of rewards, says: "But, if the officer did more than he was bound to do as such, he may recover the reward; . . . . and a promise, even by the public corporation employing him, to pay any public officer for services not required of him, is enforceable." The author cites: *Trundle* v. *Riley,* 17 Mon. B. 396; *Converse* v. *United States,* 21 How. 463; *Davis* v. *Munson,* 43 Vt. 676; 5 Am. Rep. 315; *England* v. *Davidson,* 11 Ad. & E. 856; *Morrell* v. *Quarles,* 35 Ala. 544; *City Bank* v. *Bangs,* 2 Edw. Ch. 99.

BLAKE, C. J. — The complaint alleges that "on or about the twentieth day of May, 1886, the plaintiff advanced, paid, and laid out to the use of said defendants, and for their benefit, and at their instance and request, the sum of one thousand two hundred and ninety-five dollars."

The answer, in addition to the denials, says: "That at the time plaintiff alleges to have paid, laid out, and advanced said sum of money to the use of this defendant the said plaintiff was the legally elected and qualified sheriff of Silver Bow County, State of Montana; that at about said time the plaintiff, in the exercise of the official duties as such sheriff, called to his aid a large number of citizens for the purpose of preserving the peace and good order of the said county, and then Territory of Montana, which, under the circumstances, it was his duty to do; that said citizens were called by said sheriff, and were in fact employed by him, for the purpose of preventing or quelling a riot within his county, and for protecting public and private property therein; . . . . that the sum of money, . . . . if the same or any part thereof was actually paid out by said plaintiff, was so paid by him to the citizens thus called to his aid as aforesaid as compensation for their services while so employed; and defendant says that any contract entered into by and between this plaintiff and any person purporting to represent this defendant, agreeing to bind this defendant to the payment of any money expended by this plaintiff for the purpose of inducing him to more thoroughly perform his duties and the

functions of his office, and especially that in preserving the peace and order of his said county, was unauthorized, and beyond the scope of the power and duty of such person, and void."

Upon the trial a verdict was returned for the plaintiff. The answer states fairly the facts and legal position of the appellant. The statutes provide that "each sheriff may appoint such and so many deputies as he may think proper, for whose official acts . . . . he shall be responsible; and may revoke such appointments at his pleasure." (Comp. Stats. div. 5, § 852.) It is further enacted: "It shall be the duty of the sheriff and undersheriff and deputies to keep and preserve the peace in their respective counties, and to quiet and suppress all affrays, riots, and unlawful assemblies and insurrections, for which purpose, and for the service of process in civil and criminal cases, and in apprehending or securing any person for felony or breach of the peace, they, and every coroner and constable, may call to their aid such person or persons of their county as they may deem necessary." (Comp. Stats. div. 5, § 856.) "No sheriff shall directly or indirectly ask, demand, or receive, for any service to be by him performed in the discharge of any of his official duties, any greater fees than are allowed by law." (Comp. Stats. div. 5, § 864.)

The authorities, as well as the statute, sustain the defense which has been pleaded in the answer. One of the strongest cases relied on by the appellant is that of *St. Louis etc. Ry. Co.* v. *Grafton*, 51 Ark. 504; 14 Am. St. Rep. 66. Mr. Justice Hughes, as the organ of the court, said: "The appellant [the railroad company] offered a reward of five hundred dollars each for the arrest and conviction of any one found interfering with the switches, side-tracks, or railroad property in the county of Miller, in this State. Appellees brought suit to recover six thousand dollars of appellant for the arrest and conviction of twelve persons, alleged to have interfered with a switch on appellant's road. . . . . We think that the evidence in the case shows that the appellees were, at the time of the arrest of the men, for the arrest and conviction of whom they claim the rewards offered by appellant, acting as a part of the *posse comitatus* of the sheriff of Miller County, called out to aid him in preserving the peace, and in preventing interference with the

railroad tracks, engines, trains, etc., in Miller County, and that they cannot be heard to say that in making the arrests they ignored the sheriff, and acted as private individuals. . . . . The policy of the law forbids a public officer, or those called to aid him in the discharge of a public duty, receiving any reward or compensation for his services outside of that allowed by law. The plaintiffs were assisting the sheriff's deputies — and in fact some of the plaintiffs were his regular deputies — in making these arrests, and they were paid for their services as a sheriff's posse by Miller County. Public policy and the laws forbid that they receive other reward for the same." The doctrines of *Railway Co.* v. *Grafton, supra,* are generally upheld. (Greenhood's Public Policy, 328, and cases cited; Mecham on Public Offices, § 885, and cases cited; *Ring* v. *Devlin,* 68 Wis. 384; *Brophy* v. *Marble,* 118 Mass. 548.)

It will be necessary to examine the testimony upon the issues, and ascertain whether the case at bar comes within the statutes and principles which have been expressed. Eugene Sullivan, the respondent, testified that he was the sheriff of Silver Bow County at the times mentioned in the pleadings; that he went to the depot of the railroad company (the appellant) in Butte at the request of its officers, who wanted him "to go down there and protect the property, and prevent any riot;" that some brakeman said "they were ordered out on a strike; that they would not do anything until they got orders from headquarters." Upon the morning of the second day he saw Mr. Leslie, an assistant superintendent. "There was nothing going on at the depot — nothing between twelve or one — so I went to Mr. Leslie and told him that I was going up town, and that if he wanted any assistance to telephone up to me. He told me that he wanted the yard protected. I told him that there was nobody going to do anything. There was nobody around there at the time. He said that he wanted me there to see that there would not be any harm done to the property." That the matters of the strike and appointing deputy-sheriffs were talked over with the officers of the railroad. "I told them there distinctly that the county would not pay their expenses. There was no riot there, and if these men were placed there, and really wanted around in different places in their yard, that they

would have to pay for those men themselves; that we were able to take care of the yard with our own officers — the regular officers of the sheriff's office; and when we could not take care of it that we would press men into service. Mr. Word said that the railroad company was able to pay for this work, and were willing to do it, but they wanted those men put on at those places. I went to Mr. Leslie, and wanted to draw a line or yard limit to keep everybody outside of that yard limit, but Leslie told me that he did not want to do anything of the kind. I asked him how it was that he allowed those brakemen in the yard to sleep at night, and he said that they were still considered as employees until they came in or got out entirely. That they had a certain time to come in, and as soon as that time was up they were either to be ordered out or discharged, but until that time they were considered as railroad employees. I told him that under those circumstances the county could not be responsible for paying men down there to watch anything of that kind. That an order was then prepared by Mr. Word, the attorney of the railroad company, and signed by Mr. Leslie, and delivered to Mr. Sullivan. That the order was destroyed by a fire in November, 1887. That "it requested me to put on fifty or more men at the expense of the railroad company, those men to be paid five dollars a day." That "it was signed by Mr. Leslie, as assistant superintendent of the Utah and Northern Railway Company." That "at the time we put on the first men there was nobody around there at all but the railroad employees, and those brakemen who were on a strike were right there in the yard in cabooses — all of them." That "there were thirteen strikers who were out, and would not go to work." That "I did not send those men down there that afternoon on my own motion as sheriff, to preserve the peace of the county. I was requested by Leslie to send them down." That "I have not included in this claim in any shape or manner anything for my services or for anything that I furnished — horses, teams, fire-arms, of mine, grub, or anything of that kind. There was nothing included for my services, nor for any of my regular deputies, paid by the county. At that time I had an under-sheriff and one deputy, besides the jailer, paid by the county. I had one more deputy that I paid myself."

That "this claim is entirely for money that I paid out of pocket." That Mr. Leslie "assumed absolute control of the men." That the men so employed were sworn in as deputy-sheriffs. That one train of ore cars had been disabled by cutting the air-pipes to the brakes before Sullivan was spoken to by any officers of the railroad. That "I did not see there, at any time, such a crowd assembled or threatening to assemble that I could not have handled with my regular force of deputies;" and that "I could have preserved the peace there with my regular force, and told Leslie that I could and was willing to do it."

Sullivan was corroborated by L. P. Smith, F. B. Thomas, J. J. McLeod, and Joseph Burro. Mr. Thomas testified: "I have been employed very nearly five years as deputy sheriff, under-sheriff, and in the sheriff's office of Silver Bow County. I did not see any threatening demonstrations against the railroad company, or in the vicinity of it, by the strikers or anybody else, at any time during the strike, that I would consider more than what the regular officers of the sheriff's office could attend to. I think the regular officers would have been able to attend to those matters so far as any breach of the peace or open injury to the railroad property was concerned;" and that "I should think that Mr. Leslie was in authority down there at the depot while I was there. I mean this gentleman here in court."

Mr. Burro testified: "I was under-sheriff of the county of Silver Bow at the time of this railroad strike in May, 1886. I was down around the railroad depot during the strike. . . . . I did not hear or know of any threats against the railroad company or its property at any time. There were no manifestations whatever of any evil designs except that some cars got loose in some manner; I don't know how. . . . . So far as preserving the peace was concerned, or preventing any open attack on the railroad property, there was nothing whatever occurred that could not have been handled by the regular force of the sheriff's office."

The appellant did not produce any witnesses, and did not attempt to controvert this evidence, although Mr. Leslie was present at the trial. The testimony points to one result, and

the contention of the appellant is not sustained by the facts. There was no riotous or unlawful assembly of persons at the time of the strike of the brakemen, and the respondent was not called upon to preserve the peace, or arrest any party for the violation of a law. The officers of the railroad company were apprehensive that this trouble with its employees might produce serious injury to its property and business, and therefore asked the respondent to furnish a large number of men for its protection. The sheriff was of the opinion that he could perform all the duties which the law devolved upon him for this occasion without the aid of the *posse comitatus*, and wished to exclude the strikers and their friends from the premises of the corporation. The respondent, with a full knowledge of the situation and his official responsibility for the consequences, reiterated his answer that the county would not pay for these services. He did not demand any compensation for the performance of his grave task, and declared his ability and willingness to command the peace with his regular force of deputies and without the *posse comitatus*. The officers of the company were not satisfied with this conduct, and importuned the sheriff to send to its property in Butte the men described in the pleadings. The authority of Mr. Leslie to act in behalf of the appellant is not questioned, and the employment of parties to guard its buildings, rolling stock, and track was within his power as the assistant superintendent. The respondent yielded to the desires of the officers who controlled the affairs of the company, and actually hired the watchmen, and exercised their authority in all matters concerning its property. The parties whose presence was represented to be the source of danger and destruction were allowed to remain upon the premises of the appellant when the sheriff insisted that they should be removed. The respondent decided correctly that there was no emergency which required him to invoke extraordinary force. The duties of the persons who were employed as watchmen were of a private, and not public, nature, although they were clothed with a little brief authority as deputy-sheriffs to promote their efficiency. The respondent paid for their services, for which the county was not liable, and for which no compensation was fixed by law. "We know of no principle of law which forbids a man who is threatened

with violence, or deems it necessary to his personal security, to employ about him persons capable of rendering him efficient assistance in case of need." (*Succession of Irwin*, 12 La. An. 676.)

In *Hayden* v. *Souger*, 56 Ind. 42; 26 Am. Rep. 1, Mr. Justice Worden, for the court, said: "It may be conceded that if McDavidson had been a regular constable, with a warrant in his hands for the arrest of said Hewey, it would have been his duty to make the arrest without reward, though he followed Hewey into another county, and there arrested him. . . . . It may be, also, that if McDavidson had accepted an appointment as special constable, to serve a valid warrant properly directed to him, before he had any knowledge that any reward was offered for the apprehension of the accused person, the appointment being accepted without any view to the reward offered, he would be bound to serve the warrant without reward. . . . . If he accepted the appointment after he had notice that the reward was offered, and with a view to obtain it, we are by no means prepared to say that his appointment as special constable, for the purpose of serving the warrant, would deprive him of the right to the reward. He was under no obligation to accept the appointment or make the arrest." (See, also, *Reif* v. *Paige*, 55 Wis. 496; 42 Am. Rep. 731.)

We think, therefore, that the contract referred to in the answer and evidence, which was entered into between the appellant and respondent, can be enforced in this action.

Counsel have discussed some important questions of practice, which we do not wish to determine without a full bench, and we have confined our inquiries to the merits.

It is ordered and adjudged that the judgment be affirmed.

*Affirmed.*

HARWOOD, J., concurs.

DE WITT, J., being disqualified, did not participate in this decision.