Howry, J.,
delivered tbe opinion of the court:
The claim of Spinney to recover the amount of the reward is based upon the services alleged to have been rendered by him in giving information that led to the arrest and conviction of the parties who were found guilty and sentenced by the United States court for breaking into and robbing the post-office at G-oodland, in the State of Indiana.
Under an act making appropriations for the service of the Post-Office Department, approved July 16,1894, and carrying an item of $10,000 for the payment of rewards for the detection, arrest, and conviction of post-office burglars and robbers, the Postmaster-General-issued the following notice of reward, viz:
“ Fourth. For the arrest and conviction of any person in any United States court, on the charge of breaking into a post-office and stealing therefrom, or of robbing a post-office, or of larceny from a post-office, the sum of $100 in each case wherein the amount stolen is less than $100; the sum of $150 in each case wherein the amount stolen is more than $100 and less than $500, and the sum of $200 in each case wherein the amount stolen exceeds $500; provided, that in all cases wherein a safe in a post-office is forced open, or otherwise opened, and public money or other public property stolen therefrom, the sum of $200 will be paid regardless of the amount stolen.
“ These rewards will be paid to the person or persons causing such arrests aud convictions upon presentation to the Department of satisfactory documentary proof thereof, but no claim for any of the above rewards will be entertained by the Department unless presented within six months from date of conviction.”
While this notice was in force the post-office at the place mentioned was burglariously entered, the safe therein forced open, and money and stamps belonging to the United States taken and carried away. Petitioner was the postmaster at Goodland at the time, and the safe from which the money and stamps were taken was his personal property. A hardware store near by was also broken into about the same hour of the night, and the fact was discovered by one Butler, who went to the residence of the hardware merchant to inform him of the circumstances. Butler and the merchant went to the store to inspect the premises, and then proceeded to the depot, and, after notifying the conductor of the train going south about’ that time to look out for three suspicious men who were sup *399 posed to hav e got on the train, they returned to confer with the postmaster. Together with this official, the merchant and his clerk took steps to trace the men against whom suspicion was directed by giving information which resulted in the discovery of the criminals and their apprehension at a point not far from the scene of the robbery. When arrested, pursuant to telegraphic information communicated by Spinney and another, the offenders were taken to Indianapolis, where they were tried and convicted. Petitioner gave aid in identifying the prisoners at the place of arrest and incurred some trivial expense in so doing.
Claims for reward were filed by the persons who made the arrest and by others, including the postmaster. On August 23,1895, the Postmaster-General awarded to Butler and to the .two persons making the arrest $200 each, but rejected the claim of the petitioner upon the ground that he was a postmaster and not entitled to participate in the reward.
Postmasters are not only under obligation to care for and distribute the mails which come to their hands, but are also under contract to care for and properly account to the Post-Office Department for all public money and property which they receive in their official capacity. For this purpose they are required to give bond, and every consideration of public policy would seem to suggest that they should not claim rewards for doing those things which lead with greater certainty to the assurance that the mails and public moneys in their possession are protected from depredation and robbery. This public policy likewise suggests that if a post-office is burglarized and robbed, the postmaster at the office invaded can not properly claim the reward offered by the head of the Department of which the postmaster is a subordinate for giving information that will lead to the apprehension of the offenders. As well might post-office inspectors or other special employees of the Department claim such reward.
The general rule is that a public officer can not, in the absence of a statute or an appropriation therefor that shall specifically include such public officer, recover a reward if the services performed in connection therewith come within the scope of his official duties, as payment in such cases is against public policy. Promise to reward in cases of this character is void for want of consideration. (Gilmore v. Lewis, 12 Ohio, *400 281; Bronnenburg v. Coburn, 110 Ind., 169; Harri v. Beaven, 11 Bush (Ky.), 113; Pool v. Boston, 5 Cush. (Mass.), 219; Warner v. Grace, 14 Minn., 487; Day v. Putnam Ins. Co., 16 Minn., 408; In re Russell, 51 Conn., 577; Davis v. Burns, 5 Allen (Mass.), 349; Ring v. Devlin, 68 Wis., 384; Matthews & Gunn v. United States (MSS. Op. C. Cls. R.).
Iu the case last cited the deputy of a United States marshal was allowed to recover a reward because such deputy is not-an officer upon whom, as such, the law imposes any official duty, as the only duties he may be required to perform are those which emanate from the marshal, upon whom alone they officially devolve and for which such marshal is alone responsible. The argument of expediency can not apply in the case of an individual without commission as it should to an officer directly responsible.
It is contended here, however, that the notice of the reward, was not a limited notice, but that the offer was made to “ all persons” engaged in the detection and arrest of persons convicted of the offenses named in the notice; that inasmuch as-the Postmaster-General did not restrict the offer, persons-in the service like petitioner are entitled to the same consideration as others; that the petitioner in this case acted as a private individual in aiding others to make the arrest which was not within the scope of a postmaster’s duties, and that he has the same right to demand reward or to bring action in assumpsit or ex contractu to recover the same as any other private individual who might render the same service, and finally,, that the Government accepted and received the benefit of his-exertions, and that justice would dictate that the principal victim in the felony should not be deprived of the right to share the benefit of the appropriation to the extent offered by the Postmaster-General.
We can not accept these views. It was certainly within the-scope of the official duties of the postmaster to report the occurrence without delay and to give all information in his possession for the detection of the guilty parties. It would equally have been his duty to make the arrest in the interests of the Government if the opportunity had been presented to him at the post-office to apprehend the parties with safety to himself; or, surprising the offenders in flagrante delicto, to cause the-arrest to be made by hue and cry in the immediate vicinity.. *401 was forced open was the personal property of the postmaster, and that he was therefore to the extent of its value a. loser himself, does not present any reason why the Government should reimburse him for his own loss as far as the amount of the reward would contribute to that end any more than that any other public official should be compensated, directly or indirectly, for the loss of private property taken with public property from such official at the same time. There is greater reason in this circumstance that claimant should not be rewarded for the part he took in causing the arrest than that he should be because the sufferer was personally interested in the apprehension and punishment of those who had thus injured him. The rule is on claims for rewards^ that the services must have been induced by the offer, and it j would be establishing a new rule for the Government to pay ;) the party injured for doing what it was his manifest interest ■ to do.
We can see no analogy between the case here and that where the appellate court of Illinois held that the most reasonable interpretation to be given to a notice for reward issued without restriction as to persons entitled thereto includes employees. (Chicago and Alton R. R. Co. v. Sebring, 16 Ills. App. R., 181.) That was a case between a corporation and one of its own employees in which the question of public policy and public interests had no application and could cut no figure and need not be further noticed.
If our attention is directed to the case of Orosthwaite (30 C. Cls. R., 300) for the purpose of showing that public policy is without application here as in that case, the reply is that Orosthwaite was at the time of his regular employment by the Government directed and commissioned to perform the extra special services for which he was allowed compensation. That case was merely the recognition of the rule declared by the Supreme Court in United States v. Saunders (120 U. S., 126) that a person may hold two offices and receive the salaries of both, notwithstanding the provisions of the Revised Statutes (§§ 1763, 1764, 1765) provided that they are distinct, each having its own duties and compensation, and the offices are not incompatible; and Orosthwaite having performed the special services sued for independent of his other duties was declared entitled to the special compensation. There was no question *402 of reward in that ease as here, and tbe matter of public policy was wholly different in the application.
In making the appropriation for the reward of parties detecting and apprehending post-office burglars and robbers Congress did not intend to authorize the Postmaster-General to pay persons in his own Department for such services as they might render in that behalf, and the offer of the reward by the Postmaster-General must be held to have been made with reference to the intention of the law and the well-known policy of the Government in dealing with its subordinate officials.
The result is that in the opinion of the court the petition should be dismissed, which is accordingly directed to be done.