# UNITED STATES v. MATTHEWS.

## APPEAL FROM THE COURT OF CLAIMS.

No. 79.  Argued December 8, 1898. — Decided March 6, 1899.

The authority conferred upon the Attorney General by the act of March 3, 1891, c. 542, 26 Stat. 985, to offer rewards for the detection and prosecution of crimes against the United States, preliminary to the indictment, empowered him to authorize the marshal of the Northern District of Florida to offer a reward for the arrest and delivery of a person accused of the committal of a crime against the United States in that district, the reward to be paid upon conviction; and a deputy marshal, who had complied with all the conditions of the offer and of the statute, was entitled to receive the amount of the reward offered.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Pradt* for appellants. *Mr. John G. Capers* was on his brief.

*Mr. Richard R. McMahon* and *Mr. George A. King* for appellees.

MR. JUSTICE WHITE delivered the opinion of the court.

The court below held that the plaintiffs were entitled to recover the sum by them claimed, 32 C. Cl. 123, and the United States prosecutes this appeal. The origin of the controversy and the facts upon which the legal conclusion of the court was rested are these: The two plaintiffs were, one a regular and the other a specially appointed deputy marshal. They claimed five hundred dollars, the sum of a reward offered by the Attorney General for the arrest and conviction of one Asa McNeil, who was accused of having been concerned in the killing of one or more revenue officers at a village in Holmes County, Florida. McNeil was arrested by the officers in question, tried and convicted. This suit was brought in consequence of a refusal to pay the reward. The act of March 3, 1891, c. 542, 26 Stat. 948, 985, "making appropriations for sundry civil expenses of the government for the fiscal year ending June the thirtieth, eighteen hundred and ninety-two, and for other purposes," under the heading "Miscellaneous," contained the following appropriation: "Prosecution of crimes; for the detection and prosecution of crimes against the United States, preliminary to indictment . . . under the direction of the Attorney General, . . . thirty-five thousand dollars." Under the authority thus conferred the Attorney General, on July 31, 1891, addressed a letter to the marshal of the Northern District of Florida, saying: "Your letter of July 24 is received. You are authorized to offer a reward of five hundred dollars (500) for the arrest and delivery to you, at Jacksonville, of Asa McNeil, chief of conspirators, who fired upon revenue deputies at Bonifay, Holmes County, last fall, this reward

to be paid upon conviction of said McNeil." A capias for the arrest of McNeil was executed by the deputies in question on the 11th day of July, 1892, the court below finding that the arrest was due to their exertions.

Beyond doubt the appropriation empowered the Attorney General to make the offer of reward, and hence in doing so he exercised a lawful discretion vested in him by Congress. It is also clear that the offer of the reward made by the Attorney General was broad enough to embrace an arrest made by the deputies in question. If then the right to recover is to be tested by the provisions of the statute and by the language of the offer of reward, the judgment below was correctly rendered. The United States, however, relies for reversal solely on two propositions, which it is argued are both well founded. First. That as at common law it was against public policy to allow an officer to receive a reward for the performance of a duty which he was required by law to perform, therefore the statute conferring power on the Attorney General and the offer made by him in virtue of the discretion in him vested, should be so construed as to exclude the right of the deputies in question to recover, since as deputy marshals an obligation was upon them to make the arrest without regard to the reward offered. Second. That even although it be conceded that the officers in question were otherwise entitled to recover the reward, they were without capacity to do so because of the general statutory provision forbidding "officers in any branch of the public service or any other person whose salary, pay or emoluments are fixed by law or regulations," from receiving "any additional pay, extra allowance or compensation in any form whatever," (Rev. Stat. § 1765,) and because of the further provision "that no civil officer of the government shall hereafter receive any compensation or perquisites, directly or indirectly, from the Treasury or property of the United States beyond his salary or compensation allowed by law. . . ." Act of June 20, 1874, c. 328, 18 Stat. 85, 109. The first of these contentions amounts simply to saying that though the act of Congress vested the amplest discretion on the subject

in the Attorney General, and although that discretion was by him exercised without qualification or restriction, it becomes a matter of judicial duty in construing the statute and in interpreting the authority exercised under it to disregard both the obvious meaning of the statute and the general language of the authority exercised under it by reading into the statute a qualification which it does not contain and by inserting in the offer of reward a restriction not mentioned in it, the argument being that this should be done under the assumption that it is within the province of a court to disregard a statute upon the theory that the power which it confers is contrary to public policy. It cannot be doubted that in exercising the powers conferred on him by the statute, the Attorney General could at his discretion have confined the reward offered by him to particular classes of persons. To invoke, however, judicial authority to insert such restriction in the offer of reward when it is not there found, is to ask the judicial power to exert a discretion not vested in it, but which has been lodged by the lawmaking power in a different branch of the Government. Aside from these considerations the contention as to the existence of a supposed public policy, as applied to the question in hand, is without foundation in reason and wanting in support of authority.

It is undoubted that both in England and in this country it has been held that it is contrary to public policy to enforce in a court of law, in favor of a public officer, whose duty by virtue of his employment required the doing of a particular act, any agreement or contract made by the officer with a *private individual*, stipulating that the officer should receive an extra compensation or reward for the doing of such act. An agreement of this character was considered at common law to be a species of quasi extortion, and partaking of the character of a bribe. *Bridge* v. *Cage*, Cro. Jac. 103; *Badow* v. *Salter*, Sir Wm. Jones, 65; *Stotesbury* v. *Smith*, 2 Burr. 924; *Hatch* v. *Mann*, 15 Wend. 44; *Gillmore* v. *Lewis*, 12 Ohio, 281; *Stacy* v. *State Bank of Illinois*, 4 Scam. 91; *Davies* v. *Burns*, 5 Allen, 349; *Brown* v. *Godfrey*, 33 Vt. 120; *Morrell* v. *Quarles*, 35 Ala. 544; *Day* v. *Putnam Ins. Co.*, 16

Minn. 408, 414; *Hayden* v. *Souger*, 56 Ind. 42; *Matter of Russell's Application*, 51 Conn. 577; *Ring* v. *Devlin*, 68 Wis. 384; *St. Louis &c. Railway* v. *Grafton*, 51 Ark. 504. The broad difference between the right of an officer to take from a private individual a reward or compensation for the performance of his official duty, and the capacity of such officer to receive a reward expressly authorized by competent legislative authority and sanctioned by the executive officer to whom the legislative power has delegated ample discretion to offer the reward, is too obvious to require anything but statement.

Nor is there anything in the case of *Pool* v. *Boston*, 5 Cush. 219, tending to obscure the difference which exists between the offer of a reward by competent legislative and executive authority and an offer by one not having the legal capacity to do so. In that case, the plaintiff, a watchman in the employ of the city of Boston, while patrolling the streets, in the ordinary performance of his duty, discovered and apprehended an incendiary, who was subsequently convicted. The action was brought to recover the amount of a reward which the city government had offered "for the detection and conviction of any incendiaries" who had set fire to any building in the city, or might do so, within a given period. Solely upon the authority of decisions denying the right of a public officer to recover from a private individual a reward or extra compensation for the performance of a duty owing to the party sought to be charged, it was held that there could be no recovery. The city government of Boston, acting in its official capacity, and in the exercise of the general powers vested in cities and towns by the law of Massachusetts, doubtless had authority to offer rewards for the detection and conviction of criminals. *Freeman* v. *Boston*, 5 Met. 56; *Crawshaw* v. *Roxbury*, 7 Gray, 374. But no act of the legislature, expressly or by implication, had intrusted municipal authorities with the discretion of including in an offer of reward public officers whose official duty it was to aid in the detection and conviction of criminals. There is not the slightest intimation contained in the opinion in that case that if the reward in

question had been offered within the limits of a discretion duly vested by the supreme legislative authority of the Commonwealth that the court would have considered that it was its duty to deny the power of the Commonwealth, or by indirection to frustrate the calling of such power into play, by reading into the legislative authority by construction a limitation which it did not contain.

Looking at the question of public policy by the light of the legislation of Congress, on other subjects, it becomes clear that the expediency of offering to public officers a reward as an incentive or stimulus for the energetic performance of public duty has often been resorted to. As early as July 31, 1789, in chapter 5 of the statutes of that year, a portion of the penalties, fines and forfeitures which might be recovered under the act, and which were not otherwise appropriated, were directed to be paid to one or more of certain officers of the customs. Like provisions were embodied in section 69 of chapter 35 of the act of August 4, 1790; section 2 of chapter 22 of the act of May 6, 1796; and section 91 of chapter 22 of the act of March 2, 1799. Similar provisions are also contained in the one hundred and seventy-ninth section of chapter 173, act of June 30, 1864, and the amendatory section, No. 1, of chapter 78 of the act of March 3, 1865. So, also, by section 3 of the Anti-moiety Act, chapter 391, June 22, 1874, a discretion was vested in the Secretary of the Treasury to award to officers of the customs as well as other parties, not exceeding one half of the net proceeds of forfeitures incurred in violation of the laws against smuggling. As said by Mr. Justice Grier, delivering the opinion of the court in *Dorsheimer* v. *United States,* 7 Wall. 166, 173: "The offer of a portion of such penalties to the collectors is to stimulate and reward their zeal and industry in detecting fraudulent attempts to evade the payment of duties and taxes."

The fact that the statute vested a discretion in the Attorney General to include or not to include, when he exercised the power to offer a reward, particular persons within the offer by him made, and that in the instant case the discretion was so availed of as not to exclude deputy marshals from taking

the offered reward, renders it unnecessary to determine whether a deputy marshal is an officer of the United States within the meaning of section 1765 of the Revised Statutes and section 3 of the act of June 20, 1874, to which reference has already been made. As the reward was sanctioned by the statute making the appropriation and was embraced within the offer of the Attorney General, it clearly, under any view of the case, was removed from the provisions of the statutes in question. The appropriation act being a special and later enactment operated necessarily to engraft upon the prior and general statute an exception to the extent of the power conferred on the Attorney General and necessary for the exercise of the discretion lodged in him for the purpose of carrying out the provisions of the later and special act.

*Judgment affirmed.*

MR. JUSTICE BROWN concurring in the result only.

Did the opinion of the court rest solely upon the ground stated in the opinion of the Court of Claims, that a deputy marshal is not an " officer," or " other person whose salary, pay or emoluments are fixed by law or regulations," as specified in Revised Statutes, section 1765; nor a civil officer receiving from the United States a salary or compensation allowed by law, and therefore not within the act of June 20, 1874, 18 Stat. 109, I should have been disposed, though with some doubt, to acquiesce in the opinion. While I think a deputy marshal is beyond all peradventure an officer of the United States, yet as his compensation is by fees not paid directly by the Government, but by agreement with the marshal, subject only to the limitation that such fees " shall not exceed three fourths of the fees and emoluments received or payable " to the marshal " for services rendered by him," (such deputy,) I think it a grave question whether he is within the spirit of either of the sections above quoted. I consider it a reasonable construction to hold that these sections are limited to those who receive a salary or other compensation directly from the Government, or one of its departments, and doubt their appli-

cation to one who, although holding a permanent appointment as an officer, receives no pay directly from the Government, but only such compensation as his superior may choose to allow him. *Douglas* v. *Wallace*, 161 U. S. 346.

But I cannot concur in so much of the opinion as intimates that, under an act of Congress making an appropriation for the prosecution of crime, under the direction of the Attorney General, the Attorney General has a discretion to direct any portion of it to be paid to one of a class of persons who are forbidden by a previous act from receiving any additional pay or compensation beyond such as is allowed to them by law. This could only be done upon the theory stated in the opinion that the appropriation act, being a special and later enactment, operated necessarily to engraft upon the prior and general statute an exception to the extent of the power conferred upon the Attorney General. I do not think the two acts stand in the relation of a prior general statute and a subsequent special one, but rather the converse. The prior acts are general acts, applicable to all officers of Government whose salaries or compensations are fixed by law; the latter act makes a particular appropriation for the detection of crime, and vests the Attorney General with power to direct to whom it shall be paid. But there can be no inference from it that he has a discretion to pay it to any one who is forbidden by law to receive it. I had assumed it to be the law that a later act would not be held to qualify or repeal a prior one, unless there were a positive repugnancy between the provisions of the new law and the old, and even then the prior law is only repealed to the extent of such repugnancy. This was the declared doctrine of this court in *Wood* v. *United States*, 16 Pet. 342; in *McCool* v. *Smith*, 1 Black, 459; in *Daviess* v. *Fairbairn*, 3 How. 636; in *Cope* v. *Cope*, 137 U. S. 682; in *Furman* v. *Nichol*, 8 Wall. 44; in *Ex parte Yerger*, 8 Wall. 85; in *United States* v. *Sixty-seven Packages*, 17 How. 85; and in *Red Rock* v. *Henry*, 106 U. S. 596.

In this case I see no intent whatever on the part of Congress to vary or qualify the prior law. Both enactments may properly stand together, and the prior ones be simply regarded as limiting the application of the later.

In justice to the Attorney General it ought to be said that his offer of $500 for the arrest and delivery of McNeil was a general one; and that he did not assume to say that any offi-cer of the Government, who was forbidden by law from re-ceiving extra compensation, should receive any portion of the reward. There was no attempt on his part to disregard the previous limitation or to offer it to any one who was forbid-den by law from receiving it. The subsequent action of the Acting Attorney General in refusing to pay Matthews the re-ward upon the ground that the arrest of McNeil was per-formed in the line of his duty is a still clearer intimation that no such construction as is put by the court upon the offer of reward was intended by the Attorney General.

For these reasons I cannot concur in the opinion; though I do not dissent from the result.

Mr. Justice Harlan and Mr. Justice Peckham dissented, upon the ground that the offering or payment of a reward to a public officer, for the performance of what was at all events nothing more than his official duty, was against public policy, and the act of Congress authorizing the Attorney General to offer and pay rewards, did not include or authorize the offer or payment of any reward to a public officer under such cir-cumstances.