Howry, J.,
delivered the opinion of the court:
This -claim is prosecuted by the plaintiff as the alleged detector and seizor of certain goods smuggled into the United States at the port of San Francisco, in the State of California. It is alleged to be founded upon the provisions of the act entitled “An act to amend the customs-revenue laws and repeal moieties,” approved June 22, 1874 (18 Stat. L., 186), and article 979 of the Regulations of the Treasury Department (Customs Regulations, 1892, 402), and has heretofore been considered by the court upon the demurrer of the defendants to the plaintiff’s original petition (32 C. Cls. R., 572). The demurrer having been sustained, leave was given to the plaintiff to amend, and upon the amended petition and the proof taken since the first presentation of the cause, the issues are now to be finally considered.
The findings establish that the claimant was an inspector of customs at San Francisco, Cal., and that in the month of September, 1891, he was on duty at one of the railroad stations at that port, delivering designated packages of imported goods to draymen to be taken to the appraiser’s office, and in delivering other packages of imported merchandise to importers upon presentation of duty-paid permits. At and before the time mentioned Neuberger, Reiss & Co., a firm doing business at the port, was under suspicion of defrauding the revenues by false invoices. Some time in July 1891, the special agent of the Treasury Department on duty at the custom-house of the port was informed by the head of that branch of the customs service that members of the suspected firm were selling-imported goods at rates indicating fraud, and that it would be well to watch the imports of the firm with a view of detecting the frauds. Other importing firms at the port had also imparted their suspicions of the firm to the special agent on duty at the custom-house. Thereupon this officer instructed one Murray, an inspector who had been assigned to duty in his office a short time before, to keep a special watch over the importations of the suspected firm. In September Murray wrote the letter to the special agent of the Treasury Depart *460 ment at the custom-house set forth in Finding I, and in October following Murray made a formal report to the special agent of the circumstances connected with the seizure of the goods of Neuberger, Reiss & Co., which led to the collection of a large sum of money in behalf of the Government.
The claimant’s action in the matter is comprised in the statement that on or about September 20, 1891, Neuberger, Reiss & Co. presented to him duty-paid permits from the collector of customs for the delivery of 32 cases of imported goods, which cases of goods were at that time in the custody of the claimant as inspector of customs at one of the railroad depots, and that two days thereafter he delivered all the cases designated in the permits to the drayman of the firm, except one, which the drayman would not receive because it was broken and in bad condition. On the forenoon of September 22,1891, Inspector Murray, acting upon the instructions of Special Agent Evans (which were to scrutinize closety" the importation of certain merchandise, and particularly those of the suspected firm), visited the railroad station, as he had noticed by looking over some railroad manifests that 18 cases of goods bearing the mark of Neuberger, Reiss & Co. had been entered duty-paid the previous day. When he arrived at the station he met the claimant, and Murray told him there had been some complaints at the custom-house about Neuberger, Reiss & Co., and that “if he kept his eye open he might find something to his (claimant’s) advantage.” Murray did not himself examine the broken case of goods, but started for the dock, directing the officer in charge of the case of goods to open the same and examine its contents after the railroad employees had quit work. Murray then proceeded to the dock.
When the drayman of the firm declined to receive the broken case claimant ordered a laborer at the depot to bring it near the office where it could be fixed. The case was accordingly removed near the office, and was there before Murray arrived, remaining in its broken condition until half past 3 o’clock in the afternoon of September 22,1891. After-Murray’s departure claimant examined the case and discovered that it contained woolen goods instead of the cotton goods indicated by the invoice entry at the custom-house. When the chief inspector came to the railroad depot from the custom- *461 bouse it was decided between bim and claimant that tbe goods should be taken to the custom-house the next morning, which was done. ■ The discovery of the fraud resulting from the direction of Inspector Murray to claimant to examine th§ contents of the case of goods was then reported to the surveyor and collector of the port, and attention directed to the 22 cases of merchandise imported by Neuberger, Reiss & Co. A few days thereafter other cases of goods of later importation by that firm were seized by order of the collector, and a number of them were found to contain smuggled goods. Seizures followed, resulting in a criminal prosecution of the firm, a compromise of the proceedings, pursuant to section 8469 of the Revised Statutes, and the payment of $70,000 and a fine of $5,000 by the firm to the United States.
The amended petition alleges a right to recover the 35 per cent promised by the customs regulations of the Treasury Department, which percentage of the penalty imposed on the firm committing the frauds makes the claim aggregate $24,500.
When this cause was before the court on demurrer we held that—
“Mere rumor did not lead the plaintiff to the broken case of goods. There were rumors, it is true, that several importing firms were avoiding the payment of legal duties by substitution or otherwise, and these rumors assumed the form of general belief in the community so far as Neuberger, Reiss & Co. were concerned. If, without the intervention of the visiting inspector, Murray, thé rumors had been acted upon by the plaintiff, or if the inspector had merely communicated these rumors prevailing in commercial circles and elsewhere, that frauds against the revenues had been committed, without information as to what frauds had been committed, and had failed to furnish some clew to their detection, and plaintiff had detected the frauds and seized the goods, then and in that event he would be entitled to compensation.”
For the plaintiff it is contended that the inspector, Murray, was not specialty charged with any duty pertaining to importation of merchandise; that he merely communicated general rumors that frauds against the revenues had been committed; that he gave no information as to what they were, and did not know even how they were done, supposing that it was by exchange or substitution of packages in the warehouse, which did not appear to be the mode actually adopted by the guilty *462 parties in committing the frauds, and that under these circumstances claimant is entitled to recover.
Eor the defendants it is urged that the findings make a stronger case against claimant than that set forth in the opinion of the court, heretofore rendered on demurrer to the original petition.
That public policy amply sanctions the offer of rewards to officers of the United States for special vigilance in the detection and punishment of crime is too well established to be questioned. (United States v. Matthews, 173 U. S. R., 381.) It is also true that the offer of a portion of penalties to collectors is to stimulate and reward their zeal and industry in detecting fradulent attempts to evade the payment of taxes and duties. (Dorsheimer v. United States, 7 Wall., 166, 173.) But these cases merely establish the principle that officers are not excluded in proper cases from claiming rewards under statutes providing for the payment of rewards generally in the detection of crime. There are some things, however, which officers must do regardless of rewards. They must not neglect their plain duty, or shut their eyes to any violation of law while oharged with the obligation of having others conform to such of its requirements as must be enforced by ordinary vigilance. Everything imposed upon an official in the discharge of his duty must be done in good faith without reference to extra compensation in the shape of rewards and premiums for extraordinary diligence. In the case at bar it appears that Murray imparted information in confidence to the claimant that Neuberger, Reiss & Co. were under the suspicion of smuggling. He suggested to the claimant that it would be a good plan m the case where a box was broken to compare his permit with the contents of the case; that if he, the inspector, were in the claimant’s place, he would examine the particular case then in his hands quietly,,when the men on duty around the railroad station had quit work. It is true the inspector thought, upon comparison of the permits and the special numbers ordered to appraiser’s store, that everything was all right, and it is also true that the inspector did not make the examination of the box himself, but he ordered the examination or gave directions which fairly amounted to the equivalent of a specific order. The exami *463 nation was the result of the inspector’s visit and directions. Without one or the other, or possibly both, the examination, in all probability, would. never have been made. It became the claimant’s duty to examine and even open any package of imported merchandise in his custody where there was a suspicion of smuggling by the importers of such packages. It is fairly inferable from the findings that claimant would not have examined the package — which led to the discovery of the larger frauds — if the case in' his charge had not been broken. It would be inequitable to the Government, in whose employ the claimant was, to permit him to recover upon his accidental possession of a broken case of goods and his examination of its contents after being told by his superior officer that the owners of the goods were suspected of smuggling and that the case containing the goods should be privately examined before delivery to the smugglers;
The petition is dismissed.