## REWARD FOR ARREST OF CRIMINAL.

[Circuit Court of Sandusky County.]

ISAAC BROWN v. COMMISSIONERS OF SANDUSKY COUNTY.

Decided, January Term, 1903.

*Reward—For Apprehension of One Accused of Crime—Offered Under Section 918—Not Payable to an Officer of the Law, When.*

It is contrary to public policy and the law of this state, and generally of other states, that an officer be paid a reward for the performance of an act which his duty as such officer requires him to perform; and where a sheriff of a sister state arrests a fugitive from justice at the request of the sheriff of the county in this state where the crime was committed, and performs no other duty than to go to the place indicated and make the arrest and hold the accused until the arrival of an officer from this state to whom the accused is surrendered, such sheriff does no more than is strictly within the line of his duty, and is not entitled to any further compensation that the fees allowed by law, and can not recover from the commissioners of the county a reward offered by them under Section 918 for the arrest and conviction of such accused person.

HULL, J.; HAYNES, J., and PARKER, J., concur.

The plaintiff in error was also the plaintiff below. He was the sheriff of Kittitas county, in the state of Washington, and brought suit for $1,000, which he claimed he was entitled to as a reward offered by the commissioners of Sandusky county for the arrest of a fugitive from justice. The case was tried to the court and jury and a verdict returned in favor of the defendants and judgment entered thereon. It is sought to reverse this judgment in this proceeding in error. The claim of the defendants is that Brown is not entitled to the reward, because whatever he did, he did as an officer of the law, as sheriff of the county of Kittitas, Washington; that he did nothing his duty did not require him to do, and that, therefore, he can not have nor claim any other compensation than his salary, or fees allowed him by law for such services. It is claimed by the plaintiff that the reward which was offered by the commissioners of Sandusky county, under Section 918, Revised Statutes, was a

general one, open to any one who might undertake to discover and arrest the fugitive, and if he succeeded, that he was entitled to the reward, although he may have been an officer of the law.

It appears that in 1896 Jacob Hess was murdered in Sandusky county by Louis Billow; that he fled from the county and state, and on December 23, 1896, the commissioners of the county passed this resolution:

"Fremont, Ohio, December 23, 1896.

"Resolved, that we, the commissioners of Sandusky county, Ohio, offer a reward of one thousand dollars for the arrest and conviction of Louis Billow, under indictment for murder of Jacob Hess. All former offers of reward for said Louis Billow are hereby revoked.

"(Signed): Henry Harmon,
"Christian Kiser,
"Elisha Hoff,
"County Commissioners."

This action was taken under Section 918, Revised Statutes, which provides:

"The county commissioners may, when they deem the same expedient, offer such rewards as in their judgment the nature of the case requires, for the detection or apprehension of any person charged with or convicted of a felony, and pay the same on the conviction of such person, together with all other necessary expenses, not otherwise provided for by law, incurred in making such detection or apprehension, out of the county treasury, and said commissioners may, when they deem the same expedient on the collection of a recognizance given and forfeited by such person, pay the reward so offered, or any part thereof, together with all other necessary expenses, and not otherwise provided for by law, incurred in making such detection or apprehension."

The resolution, as has been stated, was passed in December, 1896. Nearly three years went by, and in July, 1899, Billow had not been detected or arrested. About that time information came to the sheriff of Sandusky county that he was in Kittitas county, in the state of Washington; and thereupon a letter was sent by the sheriff of Sandusky county to the sheriff of Kittitas county, adressing him as sheriff, not by name, and notifying him that Billow, charged with murder in the first degree, was

in his county, and requesting him to arrest Billow, and hold him until an officer came from Sandusky county to bring him back to the state of Ohio. The letter was not produced at the trial, but according to the testimony of Deputy Sheriff Harris, of Sandusky county, this letter notified Brown that Billow was at a place called Easton, in his county. The sheriff is not clear that the letter notified him in what part of the county Billow was. In the letter of the sheriff was enclosed one of the cards which had been used by the officers of Sandusky county, in sending out notices of the reward. One one side of the card was a picture of Billow and on the other side were the words:

"Arrest for murder, Louis Billow. Wanted in Fremont, Ohio; $1,200 reward for his arrest and surrender. Thirty years old, five feet eight inches high, sandy complexion. Weight 155 pounds. Good picture on the other side.
                                    "L. C. McGormley,
          "Sheriff Sandusky County, Fremont, Ohio."

Plaintiff, on receiving this letter and card, went to Easton in his county and found Billow in a saloon; arrested him and brought him to the county jail, and immediately notified the sheriff of Sandusky county that he had arrested the man and would hold him, or words to that effect; and the authorities of Sandusky county being satisfied that the man arrested was Billow, the sheriff sent his deputy, Harris, to the state of Washington to bring Billow back to Ohio. He took with him the necessary papers from the state of Ohio for the extradition of Billow. He found Billow in the custody of the plaintiff, as sheriff, and, after the proper proceedings had been had, with the deputy sheriff of Kittitas county, Washington, as his assistant, Harris brought Billow back to Fremont, and he was afterwards tried and convicted of murder in the first degree and, upon a recommendation of mercy by the jury, sentenced to the penitentiary for life. The deputy sheriff of Kittitas county, who came back with Harris, was paid his expenses and for his time in coming to Fremont. Afterwards he returned to Washington and came back to Fremont again to testify on the trial of the case and was paid for his time and expenses at that time by the county, these sums amounting in all to several hundred dollars. But

the commissioners refused to pay Brown the $1,000 reward, or any part of it, and he brought his action to recover that amount.

It is claimed on the one hand, as I have said, that this reward as offered by the county commissioners, and as authorized to be offered by the statute, was open to any one who desired to avail himself of it, whatever official position he held. It is said there are no exceptions in the statute, but that the commissioners were authorized to offer such reward to any one, and that there are no exceptions in the resolution, and that, therefore, the plaintiff is entitled to avail himself of it and to recover.

On the other hand it is claimed by the defendants in error that it is contrary to law and to public policy to permit an officer to have a reward for performing such a service as this.

On the trial of the case certain statutes of the state of Washington were introduced in evidence. The testimony of Brown, who was not present at the trial, was offered in deposition. Deputy Sheriff Harris was called, and some other witnesses. The plaintiff did not testify in his deposition whether or not he had a warrant when he arrested Billow. But Harris testified that Brown told him that he did have a warrant; that he procured one before a justice of the peace, and with that in his hands made the arrest, and this was not denied. The court, in substance, charged the jury that if Brown performed these services in the arrest of Billow as an individual, he was entitled to recover, but that if he performed them as sheriff, and did only what he was required by law to do, he could not recover the reward, being entitled to no compensation for such services except his fees and salary. As the jury found against the plaintiff, we need not determine whether the law would permit him to claim the reward on the ground that he was acting as an individual, and not as an officer. But it is sufficient to say that we hold that under the testimony the jury were warranted in finding that the plaintiff was acting officially as sheriff, and that he procured a warrant, and acted under it and pursuant to it when he made the arrest.

In this state the law seems to be well settled that an officer, for the performance of services which it is his duty as such officer to perform, is not entitled to a reward; and that is held in most states. It is said by the court to be against public policy to permit an officer to accept any reward or compensation for such services, other than that given him by law; that it would lead to officers remaining idle and inactive, in the performance of their duties in matters of this kind until a reward was offered, and to other evils.

In a case decided by the Superior Court of Cincinnati, at General Term, in 1856, this question arose something as it does in this case, except that the reward in that case was offered by private citizens, and not by the public. The case is *Rea* v. *Smith*, 2 Han., 193. The plaintiff in the case was a sheriff of Indiana and had arrested a fugitive from justice from the state of Kentucky, and brought suit for a reward that was offered by private individuals. The opinion of the court was delivered by Judge Storer, the other judges being Spencer and Gholson. The court say in the syllabus:

"1. A public officer, whose duty it is to arrest all persons charged with or suspected of the commission of crime, can not claim any other or further remuneration for his services than the fees allowed by law.

"2. Whenever an officer makes an arrest, he is supposed to be acting in his official capacity; and where he performs the duty of sheriff, believing he was acting within the authority derived from law, the court will not allow him to change his relation and assume that of a private individual."

The court, in the opinion, say on pages 399, 400:

"Can a public officer, whose duty it is to arrest all persons charged with or suspected of the commission of crime, claim any other or further remuneration for his services than the fees allowed by law?

"Our own Supreme Court, in *Gilmore* v. *Lewis*, 12 Ohio, 281, have authoritatively settled the question, and we would have been content to have referred only to the well considered opinion of Judge Wood, without any other examination of the law, did we not feel it to be our duty, when the obligations of ministerial officers, we fear, are not always clearly understood, and in many cases are but slightly regarded, to reaffirm what we

believe to be sound law and equally sound morality, and thus vindicate the principles by which official conduct should be regulated, and the oppression, under color of law, redressed.

"It is contended, however, that the plaintiff in error, though holding the office of sheriff when he made the arrest, acted as a private person; that it was not his duty to apprehend a fugitive from the justice of another state, and can not therefore be subjected to the rule we have indicated.

"On referring to the Revised Statutes of Indiana, Vol. 2, pages 10, 11, we find the sheriff is declared to be a 'conservator of the peace, and is bound to execute all process directed to him by legal authority, and pursue and commit to the jail of the county all felons.' The power thus conferred is certainly broad enough to authorize the apprehension of murderers or felons, whether the offense was committed in Indiana or Kentucky; and it is difficult for us to perceive how the duty could be denied by the officer in every proper case, whether the accused person was a fugitive or a domestic felon. An admission of the contrary doctrine would change the character of the sheriff from that of a high public functionary, to whom the largest powers have been confided for the preservation of the public peace and the protection of private right, to the passive condition of an agent, acting only as he may be directed by the magistrate or the court. We can not so regard the question. Whenever an officer has made an arrest he is presumed to have acted in his official character; and where, as in the present case, he performs the duty of a sheriff, believing he was acting within the authority he derived from the law, we can not permit him to change his relation as an officer, and assume that of a private individual. He might well have arrested without warrant, upon probable cause of suspicion, if the necessity of the case required it, and he would have been protected if the accused should afterward have been discharged."

The case of *Gilmore* v. *Lewis*, 12 Ohio, 281, is referred to by Judge Storer. The syllabus in that case says:

"A reward offered for the apprehension of a thief, and money, can not be claimed by a constable who arrests the thief by virtue of a warrant delivered to him for that purpose."

The court say in the opinion on page 286:

"But public officers, on whom the law casts this duty, from whom it requires exertion, and to whom it affords adequate compensation, occupy different ground."

And on page 287, referring to the claims of counsel for the constable:

"But it will be seen that his view of the case can by no means be sustained. It is not the case made by the declaration. The promise of the reward, as laid, is for the apprehension of the thief and money; and this arrest of the thief, and seizure of the money, are averred to have been made by the plaintiff by virtue of a warrant delivered to him as constable. The promise is therefore illegal and void. True, it is stated the plaintiff searched out the thief, and ascertained where the money was, and made oath on which the warrant issued; but for this service no promise of reward is laid. It is for the apprehension of the thief, and seizure of the money; and as this was done in virtue of his office, the plaintiff must be content with his legal fees, and the reflection that he has done the state some service."

The question is discussed at some length in Throop on Public Officers, Section 485. The author says:

"It is evident from what has been heretofore said, that where a reward has been offered by the public authorities or by an individual, for a service which is within the line of the officer's duty, he can not claim the reward, although he may have performed the service."

A case is cited from the Supreme Court of the United States, which seems to be contrary to these authorities and to the weight of authority as laid down by the courts of the different states (*United States* v. *Matthews*, 173 U. S., 381). By act of Congress the attorney-general was authorized to offer a reward. The syllabus is short, I will read it:

"The authority conferred upon the attorney-general by the act of March 3, 1891, c. 542, 26 Stat., 985, to offer rewards for the detection and prosecution of crimes against the United States, preliminary to the indictment, empowered him to authorize the marshal of the northern district of Florida to offer a reward for the arrest and delivery of a person accused of the committal of a crime against the United States in that district, the reward to be paid upon conviction; and a deputy marshal, who had complied with all the conditions of the offer and of the statute, was entitled to receive the amount of the reward offered."

A majority of the court in this case held that the deputy marshal, having performed the service, was entitled to receive the reward.   Two of the justices, Harlan and Peckham, dissented generally from the opinion of the majority "upon the ground, as stated on page 389, in the report,". that—

"The offering or payment of a reward to a public officer, for the performance of what was at all events nothing more than his official duty, was against public policy, and the act of Congress authorizing the attorney-general to offer and pay rewards, did not include or authorize the offer or payment of any reward to a public officer under such circumstances."

Justice Brown concurred in the judgment, upon the ground, as stated by him, that the deputy marshal was not paid directly by the government of the United States, but was paid by the marshal himself, and therefore did not come within the general rule prohibiting an officer from receiving such reward.

It seems to us that the law of this state, and the law generally in other states, is against the proposition that an officer may receive a reward for the performance of an act that his duty as such officer requires him to perform.   When this statute, Section 918, Revised Statutes, was passed by the Legislature, this was the general law of the land, as it is now.   And when this resolution was adopted by the board of county commissioners of Sandusky county, there was impliedly excepted from its provisions officers who did nothing more than perform the duties of their offices.

The plaintiff had no knowledge that Billow was within his county or state until he was notified by the sheriff of Sandusky county.   He had done nothing; had expended no time nor money in the work of detecting or apprehending Billow pursuant to this reward, and when he was advised by the sheriff of Sandusky county that Billow was within his county, and, according to the witness, Harris, notified at what point he would be found in his county, he simply, as sheriff of Kittitas county; Washington, went where Billow was and arrested him, and thereupon notified the authorities of Sandusky county that he had arrested Billow, and held him in custody until the officer came from Ohio to take him back to Sandusky county.   Plaintiff

stands no differently, it seems to us, than if the sheriff of Sandusky county, instead of writing to him, had sent an officer to Kittitas county, or had gone himself and verbally notified Sheriff Brown that Billow was at Easton in that county, and requested him to arrest him, as the sheriff of that county, whose duty it was to arrest all violators of the law, and to execute any warrant that was lawfully placed in his hands, and if pursuant to such request he had gone before a justice of the peace and had sworn out a warrant, and with that in his hand had arrested Billow and turned him over to the sheriff of Sandusky county. It would be contrary to the law of this state, as we understand it, and contrary to public policy, to hold that a sheriff for performing such a service might recover a reward of $1,000 or any other sum. Brown acted entirely as an executive officer, strictly within the line of his duty as such officer. He performed no duty as a detective in ferreting out the criminal, or in ascertaining his whereabouts.

We are of the opinion that the judgment of the court of common pleas was right, and, therefore, it will be affirmed.

*Kinney, O'Farrell & Rimelspach,* for plaintiff in error.

*George H. Withey,* for defendants in error.