**BOURQUIN v. UNITED STATES.**
**AKERMAN v. SAME.**

Nos. 47649, 47654.

Court of Claims.

June 2, 1947.

George M. Bourquin, pro se.

Robert H. Anderson, of Miami, Fla. (John J. Carmody, of Washington, D. C., on the brief), for plaintiff Akerman.

Edgar T. Fell, of Baltimore, Md., John R. Franklin, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHITAKER, JONES, LITTLETON and MADDEN, JJ.

WHITAKER, Judge.

Plaintiff George M. Bourquin alleges that in May 1934 he was a judge of the United States District Court for the District of Montana, and that on that date he elected to retire from active service under the provisions of the Act of February 25, 1919, 40 Stat. 1156, 1157, 28 U.S.C.A. § 375. He sues for the difference in salary to which a District Judge was entitled at the time of his retirement and that provided for District Judges by the Act of July 31, 1946, Public Law 567, 79th Congress, c. 704, 2d Session, S. 920, 60 Stat. 716.

The allegations of plaintiff Alexander Akerman's petition, so far as the rights of the parties are concerned, are substantially the same.

The Act under which both of these judges retired provided that a judge might retire "upon the salary of which he is then in receipt * * *." That salary was $10,000.00 per annum for District Judges. The Act of July 31, 1946, provided that "in lieu of the salaries now provided by law," there should be paid "to each of the judges of the several district courts" a salary at the rate of $15,000.00 per year. Plaintiffs say that they are entitled to this increase nothwithstanding the provisions of the Act under which they retired, fixing the salary of a judge retiring thereunder at "the salary of which he is then in receipt."

The tenure and salaries of judges such as plaintiffs were the subject of section 1 of Article III of the Constitution. This section provides in part: "* * * The judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." Under this provision the term of a District Judge's office was limited only by his conduct. So long as he behaved well, so long as he discharged his duty faithfully and well, he was entitled to continue in office and was entitled to the salary of the office. But, by necessary inference, when he ceased to perform the functions of the office, he no longer under the Constitution had a right to the salary of the office.

This limitation on his right to the salary of the office was one of the reasons that led some judges to hold on to the office after

their power to perform its functions had been dissipated to a greater or lesser extent. In order to supplant those judges whose powers were thought to have become somewhat dimmed by advancing years with others younger in years and, therefore, of supposedly more virile powers, Congress at first passed an Act permitting a judge to resign and still draw his salary. But this proved insufficient to accomplish the desired result. Some superannuated judges, convinced of their adequacy to perform the duties of the office, or perhaps tenacious only of the appearance of adequacy, still held on. Then Congress, in a further effort to relieve the situation, passed an Act permitting judges to retire from active service, but allowing them to perform such duties as they might be called upon and wished to perform.

Thus, by these Acts Congress broadened somewhat the rights to which a judge was entitled under the Constitution. Under the Constitution a judge was entitled to the salary of the office only so long as he continued to perform its duties. Under these Acts of Congress he was entitled to a salary although he no longer performed the duties of the office. But in both cases, that of resignation and also of retirement, Congress provided that the salary he should thereafter receive should be the salary he was receiving at the time of his resignation or retirement. In the case of a resignation the language used was, he shall "receive the salary which is payable at the time of his resignation for the office that he held at the time of his resignation." In the case of a retirement, it was provided he "may retire, upon the salary of which he is then in receipt * * *."

These Acts violated the Constitution in no way. Under them a judge was not forced to resign or retire. He might hold on until death or impeachment; but if he chose to avail himself of the privileges granted by these Acts, over and above those he was entitled to under the Constitution, he must have done so, necessarily, on the conditions imposed by those Acts to wit, that he should continue to draw the salary he was receiving when he resigned or retired.

These Acts had special reference to the salaries of resigned or retired judges. The subsequent Act of July 31, 1946, increasing the salary of judges, was a general Act, in which resigned or retired judges were not mentioned. There is no indication that they were in the mind of Congress. Nothing indicates that Congress meant to repeal the provisions of the earlier Acts fixing the salaries of resigned or retired judges. There was good reason, of course, for Congress to have intended to grant the salary increase only to those judges who were under the obligation to perform the duties of the office and not to those who were under no obligation to do so.

The Act of July 31, 1946, has no application to retired or resigned judges unless it was intended thereby to repeal the provisions of the Act of February 25, 1919, fixing the salaries of resigned or retired judges. It does not expressly repeal that Act. Under a familiar rule of statutory construction a subsequent Act does not repeal a former one not specifically mentioned unless the provisions of the latter one are necessarily inconsistent with the former. This is especially true when the former Act dealt with a specific aspect of the subject, and the subsequent one dealt with the subject in general. The reason for this is obvious. In the passage of the former Act the mind of Congress was directed to a specific aspect of the general problem, and it dealt with it specifically, whereas in the subsequent general legislation, the mind of Congress was directed to the problem as a whole and was not centered on the specific aspect formerly dealt with. Numerous cases support this statement. See, e. g., Petri v. F. E. Creelman Lumber Co., 199 U.S. 487, 26 S.Ct. 133, 50 L.Ed. 281; State of Georgia v. Pennsylvania R. Co., 324 U.S. 439, 65 S. Ct. 716, 89 L.Ed. 1051; United States v. Jackson, 302 U.S. 628, 58 S.Ct. 390, 82 L. Ed. 488; West India Oil Co. v. Domenech, 311 U.S. 20, 61 S.Ct. 90, 85 L.Ed. 16; United States v. Walker, 22 How. 299, 16 L.Ed. 382; Russell v. Williams, 106 U.S. 623, 1 S.Ct. 409, 27 L.Ed. 220; Doolittle v. Bryan, 14 How. 563, 14 L.Ed. 543; Osborn v. Nicholson, 13 Wall. 654, 20 L.Ed.

689; Rainey v. W. R. Grace &. Co., 231 U. S. 703, 34 S.Ct. 242, 58 L.Ed. 445; Ex parte Webb, 225 U.S. 663, 32 S.Ct. 769, 56 L.Ed. 1248; Washington v. Miller, 235 U.S. 422, 35 S.Ct. 119, 59 L.Ed. 295; City of Louisiana v. Taylor, 105 U.S. 454, 26 L.Ed. 1133; United States v. Greathouse, 166 U.S. 601, 17 S.Ct. 701, 41 L.Ed. 1130; United States v. Healey, 160 U.S. 136, 16 S.Ct. 247, 40 L.Ed. 369; Harford v. United States, 8 Cranch 109, 3 L.Ed. 504; Cope v. Cope, 137 U.S. 682, 11 S.Ct. 222, 34 L. Ed. 832; United States v. Matthews, 173 U.S. 381, 19 S.Ct. 413, 43 L.Ed. 738.

In the Act of February 25, 1919, Congress dealt specifically with the salaries of resigned or retired judges; in the Act of July 31, 1946, it dealt with the salaries of judges generally, without mentioning resigned or retired judges. There is no indication that such judges were in the mind of Congress.

A retired judge was under no obligation to perform the duties of the office. He could not be required to do so. He is subject to recall only by the senior judge or the Chief Justice; but, even so, he could not be required to serve. It was provided that he might be called upon to perform only such judicial duties "as such retired judge may be willing to undertake." A judge on active duty was obligated to discharge all the duties of his office, whether he wished to or not. This was ample reason for Congress to have intended to make a distinction between the salaries of retired judges and active judges.

Whether or not the distinction between active and retired judges was in the minds of the Senate when it passed the bill, we do not know, but we must presume, at least, that it was in the mind of the House of Representatives. This House was told by its committee in charge of the legislation that the bill did not apply to resigned or retired judges. Identical bills for the salary increase were introduced in both the Senate and the House of Representatives. The judiciary committee of the House reported on the House bill on October 29, 1945. In its report, it said: "Retired and resigned judges will not receive the proposed salary increases. The statutes provide that such judges shall receive the salary payable at the time of retirement or resignation (28 U.S.C. secs. 375, 375a, 375d (1940) [28 U. S.C.A. §§ 375, 375a, 375d])." This bill was on the House calendar and the printed report of the committee was available to all members of the House from October 29, 1945, until July 20, 1946. On this date the Senate bill, having already passed the Senate, was passed by the House, in lieu of the House bill. Since the bills were identical, except for an amendment in the Senate to include within its provisions the judge of the Virgin Islands and the judges of the Tax Court, the report of the judiciary committee of the House on the House bill was, of course, a report also on the Senate bill which was passed. In this report the committee said the bill did not apply to retired or resigned judges, since the law provided that they should receive the salary payable at the time of their resignation or retirement. No member objected to this construction of the bill, or sought to make it specifically applicable to retired judges. It was passed with this report before them, unobjected to.

We are of opinion that the Act of July 31, 1946 does not apply to retired judges. Defendant's demurrers to both petitions will, therefore, be sustained and plaintiff's petitions will be dismissed. It is so ordered.

JONES and LITTLETON, Judges, concur.

MADDEN, Judge.

I dissent from the decision of the court. The situation is that the plaintiffs are United States District Judges, that the 1946 statute says that United States District Judges should be paid $15,000 per year, but that the Government refuses to pay these plaintiffs at that rate. This gives the appearance of a plain violation of a statutory right. But the Government says that the intention of Congress, in the 1946 Act, was not to give to retired judges the benefit of the Act. It says that the Act of February 25, 1919, under which the plaintiffs retired, together with certain legislative history in relation to the 1946 Act, prove this inten-

tion. The plaintiffs say that the 1946 Act is so plain in its language that resort to these other matters to ascertain its meaning is unnecessary and, therefore, improper.

I think that the meaning of the 1946 Act is plain, and doubt whether it would be proper to give it another meaning even if the evidence of another intention on the part of Congress were convincing. But I think that it is not necessary to decide that question, because the evidence does not convince me. As to the 1919 Act, its statement that a judge might retire "upon the salary of which he is then in receipt" seems to me to have no bearing upon the meaning of the 1946 Act. It may indicate that the 1919 Congress intended that the judges who retired under the act should continue to receive their salaries though Congress should set a lower salary for newly appointed judges, and conversely, that if the salaries of new judges or active judges should be raised, those of retired judges should not. There is no legislative history to indicate that Congress in 1919 had definite views about these questions. It is much more likely that what it meant was this, and no more, that a judge could retire at full salary. As to what a subsequent Congress would desire to do, no evidence appears that Congress gave thought to that question.

After 1919, and before the activity in Congress in relation to the 1946 Act, the case of Booth v. United States, 291 U.S. 339, 54 S.Ct. 379, 78 L.Ed. 836, was decided by the Supreme Court, definitely defining the status of the retired federal judge as still a judge. On October 29, 1945, H. Rept. 1162, 79th Congress, 1st Session, was submitted to the House of Representatives by its Committee on the Judiciary. The report related to H.R. 2181, which was similar in terms to S. 920 which some nine months later was enacted by both houses. The report on page 12 said "The effect of the proposed $5,000 salary increase on the cost of support of the Federal judiciary is relatively minor. It touches some 284 judgeships. * * *" In a footnote the classifications of judges were enumerated, and a number was given which was. in fact.

the number of active judges of each class. These numbers, when we add them, make 284. Then comes this statement: "Retired and resigned judges will not receive the proposed salary increases. The statutes provide that such judges shall receive the salary payable at the time of retirement or resignation (28 U.S.C., secs. 375, 375a, 375d (1940) [28 U.S.C.A. §§ 375, 375a, 375d])." The House of Representatives, so far as appears, gave no consideration to H.R. 2181, or to the committee report. In the Senate, S. 920 was reported by the Senate Committee on the Judiciary on June 28, 1946, in Rept. No. 1631. The report said: "The purpose and effect of the bill is to provide for a $5,000 increase in the annual salary of each member of the Federal Judiciary, with the exception of the judge of the District Court of the Virgin Islands, whose salary is fixed by separate statutes."

The report said on page 2: "On the basis of 284 judgeships (there has recently been a slight increase in number for which no figures are yet available), the additional annual gross expenditure would be $1,420,-000, and that would result in a total gross expenditure for judicial salaries of $4,523,-500."

The bill was amended in the Senate to include the judge of the Virgin Islands, and the judges of the Tax Court, and was then passed. Nothing in the debates in the Senate throws light on our problem. S. 920 then went to the House. There again the debates did not touch our question. Three members of the House, in extensions of remarks which would not, I suppose, have been available to the members until after the House had acted, spoke of the number of judgeships affected by the bill as being 284, or approximately that many.

I find in this history very little evidence that the 1946 Act does not mean what it says. The writer of the report on H.R. 2181 was, apparently, of the mistaken opinion that, because the 1919 Act says what it says, the new legislation would not apply to retired judges. That proposition would not have stood the test of debate or discussion. But, the bill never coming before the House. there is. of course, no evidence

that the House acquiesced in the statement in the report.

In the Senate, and later in the House, on S. 920 which became the 1946 Act, nothing whatever, except the mention of the numbers of the various types of judges to be affected by the bill, indicates that retired judges were not to be included. Whoever furnished these numbers apparently did not know or had forgotten about the retired judges. But that is no reason why the meaning of the Act's language should be warped to accord with this lack of information or lapse of memory. If the Act had been written to say what the Government says it means, it would have been difficult indeed to justify the omission of the retired judges. The Act was largely a cost of living increase in salary, and the need of the retired judges for the increase was the same as that of the active judges.

I think that the plaintiffs' petitions state good causes of action, and that the demurrers should be overruled.

WHALEY, Chief Justice, took no part in the decision of this case.