361 F.2d 899
 Grover T. DAVIS, Jr., Appellant,
v.
Mrs. Hildegarde MATHEWS, Vernie Williams, Mrs. Opal Kiefer,
Herbert Margon, Millard Wallace, John D. Warfield, William
Markham, Mrs. Mary Kathleen McLntyre, William A. Ballard,
The Charleston National Bank, a National Banking
Association, and Kanawha City Savings & Loan Company, a
corporation, Appellees.
Opal KIEFER and Millard Wallace, Appellants,
v.
Mrs. Hildegarde MATHEWS, Vernie Williams, Grover T. Davis,
Jr., Herbert Margon, John D. Warfield, William Markham, Mrs.
Mary Kathleen McIntyre, William A. Ballard, The Charleston
National Bank, a National Banking Association, and Kanawha
City Savings & Loan Company, a corporation, Appellees.
 Nos. 10124, 10125.
 United States Court of Appeals Fourth Circuit.
 Argued Jan. 3, 1966.
Decided May 30, 1966.
 
 George A. Daugherty, Charleston, W. Va., for Grover T. Davis, Jr.
 H. D. Rollins and W. Hayes Pettry, Charleston, W. Va., for Opal Kiefer and Millard Wallace.
 Howard R. Klostermeyer, Charleston, W. Va. (Spilman, Thomas, Battle & Klostermeyer, Charleston, W. Va., on brief), for Mrs. Mary Kathleen McIntyre.
 George S. Sharp, Charleston, W. Va. (Kay, Casto & Chaney, Charleston, w. Va., on brief), for Mrs. Hildegarde Mathews.
 B. D. Horan, Charleston, W. Va., for Vernie Williams.
 Before BOREMAN and J. SPENCER BELL, Circuit Judges, and BUTLER, District Judge.
 J. SPENCER BELL, Circuit Judge:
 
 
 1
 The West Virginia Department of Motor Vehicles was robbed of $360,000.00. This controversy involves the distribution of a reward offered by an insurance company for the arrest and conviction of the person responsible and for the return of the money. By the terms of the offer the determination as to which persons should receive the reward was to be made by a committee of three prominent citizens named by the company. The committee determined that the award should be divided between Mrs. Hildegarde Mathews, Mrs. Mary Kathleen McIntyre and Mr. Grover T. Davis. An unsuccessful claimant brought an action against the insurance company for the reward. The company, fearing multiple liability, paid the reward fund into the court and joined all claimants into the present interpleader action pursuant to rule 22 of the Federal Rules of Civil Procedure.
 
 
 2
 The payment into the court discharges the insurance company of further liability. As regards each claimant, however, it is in effect a refusal to pay which forces each claimant to seek the assistance of the court to enforce his claim. The court, therefore, unlike the committee, must consider questions of public policy involved in the three awards made by the committee which were raised by the other claimants before the district court. Grover Davis is an investigator for the prosecuting attorney of Kanawha County, West Virginia, where the crime occurred. Mrs. Mary Kathleen McIntyre is the mother of the assistant prosecuting attorney of the County. Mrs. Hildegarde Mathews is the wife of the thief. We agree with the district court that public policy bars Mr. Davis but does not bar either Mrs. McIntyre or Mrs. Mathews.
 
 
 3
 Mr. Davis was a salaried, fulltime, 'crime detector' for the prosecutor's office.[1] It was his official duty to investigate crime. For this he was paid by the county. The principle is well settled that on considerations of public policy an officer cannot lawfully claim a reward for the performance of services it is his duty to discharge.
 
 
 4
 'It is undoubted that both in England and in this country it has been held that it is contrary to public policy to enforce in a court of law, in favor of a public officer, whose duty by virtue of his employment required the doing of a particular act, any agreement or contract made by the officer with a private individual, stipulating that the officer should receive an extra compensation or reward for the doing of such act. An agreement of this character was considered at common law to be a species of quasi extortion, and partaking of the character of a bribe.' United States v. Matthews, 173 U.S. 381, 384, 19 S.Ct. 413, 414, 43 L.Ed. 738 (1899).
 
 
 5
 The West Virginia Supreme Court has held similarly:
 
 
 6
 'For his (official) services in such connection he may have recompense only as fixed by law. A promise of a third person, whether individual or corporate, to remunerate him for such services is against public policy and cannot be enforced.' Ferrell v. State Compensation Com'r, 114 W.Va. 555, 556, 172 S.E. 609, 610 (1934).
 
 
 7
 Davis argues that he had only limited official capacity, that he acted only when assigned to a case by the prosecuting attorney. The record does not support such a contention. First, the West Virginia statutes require that 'every public officer shall give him (the prosecuting attorney) information of the violation of any penal law committed within his county.' Chap. 7, Art. 4, 1. Second, Davis was appointed as a full-time investigator or detector of crime. His appointment was made by the prosecutor to aid him in his general work, not for any particular case. In the area, therefore, of investigation and detection of crime his scope of authority was coextensive with that of the prosecuting attorney. We hold that Mr. Davis' claim is barred by public policy.
 
 
 8
 Little time need be spent on the objections to the claims of Mrs. McIntyre or Mrs. Mathews. Mrs. McIntyre is the mother of the assistant prosecuting attorney. This relationship does not create any arbitrary legal bar. No allegation is made that Mrs. McIntyre did not supply valuable information or that she used the position of her son to secure information not otherwise available.
 
 
 9
 Mrs. Mathews is the wife of the culprit. There is no policy which should prevent her from receiving her share of the reward. This payment is not to the thief.[2] Under the West Virginia law the recovery is the separate property of Mrs. Mathews, not subject to any claim by Mr. Mathews or his creditors. Chap. 48, Art. 3, 1, West Virginia Code. Since the award will be Mrs. Mathews' separate property, her relationship to Mr. Mathews is an irrelevance. Further, at the time of the initial awards Mr. Mathews was in prison for the theft.
 
 
 10
 All of the claimants with the exception of Mr. Davis have consented to have the court make the awards without being bound by the committee's determination. Having disallowed Mr. Davis' claim it was proper then for the court to apportion his share among the other claimants in order to settle the entire dispute. We can find no error in this distribution.
 
 
 11
 The decision of the district court is affirmed.
 
 
 12
 Affirmed.
 
 
 13
 BUTLER, District Judge (concurring in part and dissenting in part):
 
 
 14
 The offer of reward involved here contained a provision that the final determination as to the recipients would be left to a board of prominent citizens to be named by the offeror insurance company. This method of determining the recipients was a material term of the contract. No one could become a party to the contract without acceptance of this term, for the reason that an offeree cannot accept one provision of a contract and reject another. Hence, the parties could not confer jurisdiction on the court to make the distribution.
 
 
 15
 'With respect to an offer of reward providing that the offeror shall be the final judge of disputes arising over the reward, the power of the court, and the right of claimant, are limited to enforcing action by the offeror on the claims for reward.' 77 C.J.S. Rewards 41.
 
 
 16
 This language indicates that the court can only compel the offerer to do what he has contracted to do, i.e., to effect a distribution to proper claimants. The disposition is not subject to review on the facts and no action lies after the claims have been considered and rejected. 77 C.J.S. Rewards 41. It is otherwise, of course, where fraud in the distribution is alleged, but there is no such allegation here.
 
 
 17
 The fact that the funds were paid into court makes no difference, for once the board made its determination pursuant to the contract offer there was no standing among claimants to sue. Of course, when faced with multiple claims it was the right of the offeror to interplead. But it was also the duty of the court, in protecting the offeror against multiple claims, to conclude in the interpleader action that, as a matter of law, the determination of the board was final absent a showing of fraud or contravention of public policy.
 
 
 18
 This view of the district court's function leaves it without power to do more than approve the board's action, subject to the exception that it could set aside the award to Davis as contrary to public policy. Any citizen has standing to sue to prevent an act that contravenes public policy. Therefore, the contract provision setting forth the conclusiveness of the board's determination could not and did not preclude an attack on this ground. Hence, when Kiefer sued to upset the board's determination, she had no standing to sue as a claimant but she did have standing to sue as a citizen to prevent an award that was against public policy.[1] Because of this limitation, only the award to Davis could be attacked. All other awards were final. Having vacated the award to Davis, it appears that the court was without jurisdiction to make its own distribution of the monies improperly awarded, but the duty devolved on the offeror's board to distribute the remaining monies pursuant to the contract offer.
 
 
 19
 For the foregoing reasons, I would affirm the district court's decision that Davis is ineligible to share in the reward. I would reverse as to the distribution made by the district court, and remand with instructions to the district court to direct the interpleading insurer to reconvene its board to determine what person or persons shall be eligible to receive part or all of the remaining monies, without prejudice to the right of any person, other that Davis, to present or renew his claim. If the original board should fail or refuse to act, the district court has power to order the interpleading insurer to comply with its contractual obligation by appointing another 'board of prominent citizens' to perform this function.
 
 
 
 [1]
 Chapter 7, Article 4, Section 2, Code of West Virginia, provides in part as follows:
 'The prosecuting attorney of any county, with the approval of the county court, or of the governor, or of the court of the county vested with authority to try criminal offenses, * * * may, within his discretion, offer rewards for the apprehension of persons charged with crime, or may expend money for the detection of crime. * * * Provided, however, that nothing herein shall permit or give to the prosecuting attorney of any county, having a population according to the last official census of sixty thousand or less, the right to appoint a full-time investigator or detector of crime * * *.'
 
 
 [2]
 We need not decide whether such payment could be made to the thief. It would seem that an offer of a reward for the return of stolen property which is addressed to the thief is not contrary to public policy and thus void, so long as it has not the object or effect of interfering with the apprehension or conviction of criminals. Schirm v. Wieman, 103 Md. 541, 63 A. 1056. West Virginia has held that 'It is well settled law that * * * one whose money or property has been embezzled, or fraudulently procured, may contract with such wrongdoer for repayment or satisfaction of the loss, and take security therefor, without invalidating such contract, unless there be included therein and as part consideration therefor some promise or agreement, express or implied, that such prosecution shall be suppressed, stifled or stayed.' Bd. of Education v. Angel, 75 W.Va. 747, 84 S.E. 747, L.R.A.1915E, 139 (1915)
 
 
 [1]
 I concur with the majority opinion that under the circumstances of this case public policy does not forbid participation by the thief's wife