## TAYLOR ET AL. v. AMERICAN BANK & TRUST CO. ET AL.

(May 25, 1931. Opinion and Decree.)
(July 20, 1931. Rehearing Refused.)
(October 6, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

Edward Rightor and W. H. Sellers, of New Orleans, attorneys for plaintiffs, appellees.

Merrick, Schwarz, Guste, Barnette & Redmann, of New Orleans, attorneys for defendants, appellants.

JANVIER, J. Plaintiffs, all members of the police force of the city of New Orleans, seek to collect from the various defendant banks rewards alleged to be due them in accordance with the notice quoted below, as the result of their having furnished information leading to the arrest of certain bandits who participated in the robbery of the Algiers branch of the Canal Bank & Trust Company on November 27, 1929.

At some time prior to November 27, 1929, defendant banks, members and associate members of the New Orleans Clearing House Association, had posted in their various places of business and had otherwise circulated printed notices or handbills reading as follows:

"$5,000 REWARD
"For information leading to the arrest and conviction of

BANK ROBBERS
"A reward of $5,000.00 will be paid by the NEW ORLEANS CLEARING HOUSE ASSOCIATION to the person or persons who furnish information leading to the arrest and conviction of the participants in any robbery of or attempt to rob or hold up any Member or any Associate-Member of the Association or a branch bank of any Member or Associate-Member Bank, or any messenger or agent of such banks or branches. The killing of any person or persons in the act of committing such robbery, or in the act of attempting such robbery or hold up, shall, for the purpose of this reward, be considered as an arrest and conviction of such person or persons. All claims for such reward must be made to the Association within thirty (30) days after conviction.

"The Association is the sole judge of any dispute arising over the reward and the person or persons, if any, entitled to share therein, and its decision on any point connected with the reward will be final and conclusive.

"THE MEMBERS OF THE NEW ORLEANS CLEARING HOUSE ASSOCIATION ARE:
"American Bank & Trust Company
"Canal Bank & Trust Company
"Hibernia Bank & Trust Company
"Interstate Trust & Banking Company
"New Orleans Bank & Trust Company
"Whitney-Central National Bank
"Whitney-Central Trust & Savings Bank
"ASSOCIATE-MEMBERS:
"Algiers Trust & Savings Bank
"Gretna Trust & Savings Bank
"Jefferson Trust & Savings Bank, Gretna, La.
"Metairie Bank
"St. Bernard Bank & Trust Company."

Plaintiffs allege that they were aware of the said notice; that their action, in courageously and intelligently following the various clues left by the bandits and in obtaining and in transmitting the information obtained constituted acceptance by them of the offer made by the banks and that this acceptance converted the said offer into a contract between them and the banks, under which contract they now bring this action.

Various defenses are presented, all but one of which we have found it unnecessary to consider, since that one appears to us to be well-founded and to offer an in-

surmountable barrier to plaintiffs' recovery. That defense is that all of the plaintiffs are public officers employed by the city of New Orleans for the purpose of tracking down and apprehending criminals guilty of violations of law committed within the territorial limits of the city of New Orleans, and that, thus, not only is it against public policy that such public officers should be permitted to claim rewards for services performed in line of duty, but, even if no question of public policy were involved, no consideration for the contract has been given by plaintiffs, since all that they did they were bound by their official duties to do.

It is conceded that in most jurisdictions it is violative of the public policy for peace officers to demand special rewards for services performed in line of duty, however courageous or meritorious the services may have been, but it is argued that in this state not only has no such public policy been established by statute, ordinance or jurisprudence, but that, on the contrary, many legislative and municipal enactments indicate a public policy favorable to the acceptance of such rewards or gratuities. Our attention is directed to the following:

Section 35 of Act No. 74 of 1868; Jewell's Digest of Municipal Ordinances (1882) p. 304, sec. 28; section 22 of Act No. 63 of 1888; section 23 of Act No. 95 of 1896; section 10 of Act No. 32 of 1904; Act No. 10 of 1910; section 54 of Act No. 159 of 1912; section 7 of Act No. 27 of 1914; Act No. 29 of 1926.

We have most carefully considered the above referred to statutes and the ordinance set forth in Jewell's Digest. The ordinance referred to absolutely prohibits the receipt by a public police officer of such a reward.

The various statutes referred to are not indicative of a public policy favoring the right of a public peace officer to demand such rewards and it is evident that the framers thereof intended that only in extraordinary cases and only after the strictest scrutiny by the proper officials should police officers be permitted to retain rewards, if voluntarily tendered.

We find a vast distinction between permitting a police officer to retain a reward tendered after the performance of service and authorizing the same officer to bring suit for a reward claimed to be due him as the result of a contract.

We do not believe that the enactments to which we have referred indicate that in this state there has been established a public policy favorable to permitting public officers to demand rewards for services performed in line of duty, even when such rewards have, prior to the performance of the service, been offered to the general public, without restriction or limitation.

Counsel for plaintiffs argue that, even if we come to such conclusion, nevertheless, plaintiffs here should be permitted to recover because the information was obtained and transmitted outside of the territorial limits of the parish of Orleans, which limits also form the jurisdictional boundaries of the authority of plaintiffs; that, thus, as soon as they crossed the border of Orleans parish and entered the parish of Plaquemines, they lost their character as police officers of the city of New Orleans and became private citizens; and that, therefore, any acts done by them were not done in their respective official capacities, nor within the scope of their official duties, and that, thus, in so acting,

they, as other private citizens would have been, are entitled to the reward.

This contention is based on the alleged absence of authority of Orleans police officers to make arrests in the parish of Plaquemines. Whether officers of one parish may in another parish apprehend criminals for acts done in the parish in which the officers have jurisdiction is an interesting question, but one which we find it unnecessary to solve in considering the contention now confronting us because it is not the arrest which was made in the parish of Plaquemines which forms the basis of the claims for the reward, but the furnishing of the information, and it cannot be denied that a peace officer, if sent by his superior into another parish to obtain information, is, while seeking that information, acting within the line and scope of his official duties.

It appears from the testimony of De-Roccha, one of the plaintiffs, that when they left New Orleans to go into the adjoining parish, they did so under orders of their superior officer, Superintendent Ray. How, then, can it be contended that, in obtaining the information, they were acting as private citizens? If they obtained the information while acting as peace officers, how can they claim a reward for divulging it? How can they claim that in divulging it they furnished a consideration sufficient to bring into existence a contract with the various banks who had offered the reward? The information was not theirs to sell or to barter. It belonged to the officers entitled to receive it and in transmitting it they did only what their duties required.

Instead of finding, in Union Pacific R. Co. v. Belek (D. C.) 211 F. 699, 708, anything antagonistic to the views which we have expressed, we see in that opinion language impressively supporting the doctrine which we consider sound. There the court held that a peace officer who, without a warrant, arrested a fugitive from justice from another state, was entitled to a reward because his duties in such case were "limited to the execution of a warrant for such arrest." Thus, the officer was doing something not entirely within the scope of his duties. The court said that if it had been within the scope of his duties to make such arrest, then for doing so he could not have claimed the reward. The court used this language:

"As there does not appear to have been any duty imposed by law upon the two police officers who made the arrest, they are entitled to receive the amount offered for that service."

Here, as we have shown, it was the duty to which these officers were assigned to go into the adjoining parish and there obtain information. In obtaining and transmitting it they did their duty. That they did it well and courageously does not entitle them to enforce the payment of a reward.

The various statutes to which we at first referred do no more than declare that in such situation, if the banks had voluntarily paid the reward, the proper superior authorities might, if it appeared proper, permit the officers to retain a portion of it.

Murphy v. City of New Orleans, 11 La. Ann. 323, is distinguishable on two grounds: First, that Murphy was not performing an act incumbent upon him; second, that the reward was offered by public officials and not by a private citizen.

That the act was not one incumbent upon Murphy appears from the following language in the decision:

"It does not appear that the defendant was acting as a police officer when Roberts was accused of the crime for which he was convicted and sentenced. But admitting that he did, nothing shows that it was incumbent on him as such to perform the act for which he claims the reward allowed under the ordinance."

That there is a vast distinction between permitting a public employee to claim a reward offered by his superiors and permitting him to demand a reward tendered by a private citizen, appears from a decision of the Supreme Court of the United States, United States v. Matthews, 173 U. S. 381, 19 S. Ct. 413, 415, 43 L. Ed. 738, in which Mr. Chief Justice White said:

"The broad difference between the right of an officer to take from a private individual a reward or compensation for the performance of his official duty, and the capacity of such officer to receive a reward expressly authorized by competent legislative authority, and sanctioned by the executive officer to whom the legislative power has delegated ample discretion to offer the reward, is too obvious to require anything but statement."

That plaintiffs, at the time they obtained the information, were on duty and were acting as public peace officers, is conclusively shown by the testimony of De-Roccha, and that he, at least, was not acting as a private citizen is best evidenced by the fact that when he was off duty he immediately ceased his efforts to apprehend the criminals.

On the day which intervened between that on which the crime was committed and that on which the information was obtained DeRoccha was "off duty." Had he on that day, though off duty, devoted himself to the solution of the crime, a different question might have been presented. But he did not do so. On that intervening day he went on a hunting expedition not for criminals, but for game, and it was not until the next day when he had returned to his official duties that he again took up the task of seeking the necessary information.

While it may be that there is nothing objectionable in permitting a police officer or other public servant, after performing meritorious services, to accept a reward voluntarily offered, we feel that, with reference to the legal right of such officer or servant to demand such reward, the public policy of this state is identical with that of all other states and with that of the United States as expressed by Mr. Chief Justice White in United States v. Matthews, supra, in the following words:

"It is undoubted that both in England and in this country it has been held that it is contrary to public policy to enforce in a court of law, in favor of a public officer whose duty by virtue of his employment required the doing of a particular act, any agreement or contract made by the officer with a private individual, stipulating that the officer should receive an extra compensation or reward for the doing of such act."

The trial court rendered judgment in favor of the various claimants each for his virile share of the total reward of $5,000. The judgment was erroneous.

It is ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that there now be judgment in favor of defendants and against plaintiffs, dismissing this suit at the cost of plaintiffs.

---

### ON MOTION TO DISMISS

HIGGINS, J. The four plaintiffs, members of the New Orleans police force, sued the eleven defendants jointly to recover the sum of $5,000, alleged to have

been offered as a reward for the arrest and conviction of bank bandits.

There was judgment as prayed for against each of the defendants in the sum of $416.66, except as to one of the defendants, against which judgment for $833.33 was rendered. The defendants have appealed.

The appellees filed a motion to dismiss the appeal on the ground that under the provisions of section 10 of article 7 of the Constitution of 1921, with reference to the judicial department, the Supreme Court has appellate jurisdiction of the case, contending that the fund to be distributed is $5,000.

The prayer of the petition reads as follows:

"Wherefore, petitioners pray that said defendants be cited to appear and answer this demand and that after due proceedings had, there be judgment in favor of your petitioners and against each defendant in the sum of Four Hundred Sixteen and 66/100 ($416.66) Dollars, except defendant Gretna Trust & Savings Bank, there be judgment against it in the sum of Eight Hundred Thirty Three and 32/100 ($833.32) Dollars with 5% on each amount from December 4th, 1929, and with all costs of Court and general relief."

The question before us is whether we should regard this as a suit involving the distribution of a fund of $5,000 or as a joint action to recover of each of the defendants, who are bound severally, amounts of less than $2,000, but which aggregate more than $2,000.

In the case of Meritt v. Hozey, 4 Rob. 319, the court said:

"This suit is brought to recover from the late Sheriff of the Parish of Orleans, and his sureties, $600. with interest and costs. There are eight sureties on the

bond, all of whom are joined in this action, each of them being severally bound for a fixed sum; and judgment is prayed for against the principal for the whole amount, and against each of the sureties, for such amounts as will be in proportion to the respective sums for which each has bound himself in the bond. Judgment was rendered against four of the sureties, each for the sum of $93.33-1/3 with interest; and against four others, each for the sum of $81.66-2/3, with interest. From this judgment or judgments, (they are all in one) four of the sureties appealed in one petition, and gave bond and security in the sum of $1,000. for which they are jointly bound, and the surety bound generally for all. * * *

"The appellee moves to dismiss the appeal, for want of jurisdiction, as the amount claimed of each surety, does not exceed three hundred dollars.

"We are of opinion that the appeals must be dismissed. The sum claimed of each of the defendants is less than $300; and they cannot, by joining in one appeal, give the court jurisdiction, when they have separately no right to be heard. In 5 Mart. N. S. 87, the court said: 'The attempt made by this mode of proceeding to obtain a review of these judgments, and to have their nullity established, is an attempt to have that done indirectly, which the law will not permit to be done directly. We are of opinion that we cannot, in this way, take cognizance of cases of which the constitution and the law have denied us jurisdiction.'

"The appellants contend, that as the plaintiff has joined them in the same suit, he has himself made a case, which authorizes them to appeal. We are of a different opinion. If a separate suit had been instituted against each appellant, claiming only the sum of $93-1/3 it is very clear no one of them would have been entitled to an appeal; and we do not see that the joining of them in one suit makes any difference as to their rights. If they thought their rights endangered by being all joined in the same suit, the appellants ought to have objected in the inferior court, and not have reserved their objections for this tribunal."

In the case of Hotard et al. v. Perilloux, 160 La. 752, the Supreme Court said:

"There are six plaintiffs in this suit, * * *. Each plaintiff is the owner of a separate tract of land, and the defendant owns land situated immediately in the rear of plaintiffs' properties. The suit is for damages to the plaintiffs resulting from an alleged breach of contract by the defendant to keep open and to properly maintain a certain described ditch or canal which served to drain the plaintiffs' properties. The total sum claimed is $2,395.25, and the prayer of the petition is for that sum, to be apportioned in the judgment to the respective plaintiffs as follows: Noe Hotard, Charles Darensbourg, Ernest Vicknair and John Wilson, $450.00 to each; to Morris Perilloux, $300; and to John Hall, $250.00.

"* * * Defendant moved this court to dismiss the appeal * * *.

"Section 10 of Article 7 of the Constitution of 1921 provides that this court shall have appellate jurisdiction in all civil suits where the amount in dispute, or the fund to be distributed, shall exceed $2,000. exclusive of interest, except those for physical injuries or for the death of a person or those brought under the state or federal Workmen's Compensation Law.

"This suit cannot be differentiated from the case of Alessi et al. v. Town of Independence, 76 So. 792, 142 La. 338.

"In this case, the cause of action of each plaintiff grew out of the same alleged quasi offense on the part of the defendant. Each plaintiff has a separate and distinct right of action in which none of his co-plaintiffs have the slightest interest. Plaintiffs have cumulated their demands in a single suit against a common defendant, and the sum claimed by each plaintiff is far below our appellate jurisdiction. In the Alessi case this court said:

" 'The question then is: Could they by consenting to cumulate their demands, bring them within the appellate jurisdiction of this court? Surely, if each separate claim had been for an amount below the original jurisdiction of the district court, the plaintiffs could not have given that court jurisdiction, by consenting to cumulate their demands, even though their cause of action arose from one and the same alleged quasi offense on the part of the defendant. And it seems equally plain that the plaintiffs did not, and could not, give this court jurisdiction of the several claims of which we had no jurisdiction by consenting to cumulate their demands. See Bazoni v. Marcexa, 18 La. Ann. 136; Broadwell v. Smith et al., 28 Ann. 172; Stevenson v. Weber, 29 La. Ann. 108; Larrieux v. Crescent City L. S. & S. H. Co., 30 La. Ann. 609; Louisiana Western R. R. Co. v. Hopkins, et als., 33 La. Ann. 806; Tague v. Royal Insurance Company, 38 La. Ann. 457; Harrison & Harrison v. Moss & Company, 6 So. 528, 41 La. Ann. 239; Southern Timber & Land Company v. Wartell, 33 So. 559, 109 La. 456, and decisions there cited. Our conclusion is that this court has not jurisdiction of the case.'

"We adhere to the ruling in Alessi et al. v. Town of Independence, and it is therefore ordered that this case be transferred to the Court of Appeal, Parish of Orleans."

See, also, Louisiana Digest, verbo Courts, sections 128-144, vols. 8 and 9.

In the present case it does not appear to us that the alleged $5,000 reward is a sum to be distributed among respective claimants but is a joint suit by the plaintiffs who have separate and distinct rights of action in which their co-plaintiffs have no interest. The fact that all the plaintiffs join in one suit for specific amounts shows that there is no controversy among them as to the amount that each claims from the defendants. The defendants are severally liable for the alleged respective amounts due each of the plaintiffs, none of which said amounts exceed the sum of $2,000. We are, therefore, of the opinion that this court has jurisdiction and the motion to dismiss the appeal is not well founded.