234 So.2d 794 (1970)
Mrs. Blanche Mae CHARLES et al., Plaintiffs-Appellants,
v.
TOWN OF JEANERETTE, INC., et al., Defendants-Appellees.
No. 3022.
Court of Appeal of Louisiana, Third Circuit.
April 30, 1970.
Rehearing Denied May 27, 1970.
*796 Charles H. Finley, Lafayette, for plaintiff-appellant.
Wilbur L. Allain, Jeanerette, Mouton, Champagne & Colomb, by Patrick L. Colomb, Lafayette, for defendants-appellees.
Before FRUGÉ, HOOD, and MILLER, JJ.
HOOD, Judge.
This is a tort action instituted by Mrs. Blanche Mae Charles, individually and as Natural Tutrix for her five minor children, to recover damages for the wrongful death of plaintiff's husband, Clifford Charles, Jr. The defendants are the Town of Jeanerette, Louisiana, and Nolan J. Landry, a police officer employed by that community. The trial judge rendered judgment in favor of plaintiff and against defendant Landry, but he rejected plaintiff's demands against the Town of Jeanerette. Plaintiff has appealed. Neither of the defendants has answered the appeal.
Since Landry has not appealed or answered the appeal, the judgment which was rendered against him is final insofar as it decrees liability on his part. The principal issues presented on this appeal are whether plaintiff also is entitled to recover against the Town of Jeanerette, and whether the amount of the award should be increased.
Prior to the institution of this suit a Concurrent Resolution was adopted by both houses of the Louisiana Legislature authorizing the filing of this action against the Town of Jeanerette, and waiving the town's immunity from suit and liability insofar as this suit is concerned.
The incident which resulted in the death of plaintiff's husband occurred about 2:30 A.M. on July 31, 1965, at or near the decedent's home in St. Mary Parish. The Town of Jeanerette is located in Iberia Parish, and on the extreme east side of that parish, the east corporate limits of the town coinciding with the eastern boundary of Iberia Parish. U.S. Highway 90 runs generally east and west through the middle of the town. Trappey Street, running north and south, adjoins or connects with the south side of Highway 90, in the Town of Jeanerette, the junction of these two thoroughfares forming a "T" intersection. This intersection is located four blocks, or three-tenths of a mile, west of the east corporate limits of the Town of Jeanerette.
The decedent, Charles, lived with his wife and their children in Sorrell, a small hamlet or community in St. Mary Parish, his residence being located more than three miles east of, and outside, the corporate limits of the Town of Jeanerette.
On May 11, 1965, Nolan J. Landry was duly appointed or employed by the Mayor and Board of Aldermen of the Town of Jeanerette to serve as a police officer for that community. He was on duty as a police officer of that town on the night of July 30, and during the early morning hours of July 31, 1965.
At about 2:30 A.M. on the last mentioned date, the decedent drove his automobile north on Trappey Street, in Jeanerette, to the intersection of that street with Highway 90. He brought his car to a stop at that crossing, and then turned to his right and proceeded east on Highway 90 toward his home. Immediately after the turn was made, the decedent "speed shifted" his car into second gear, caused his *797 wheels to spin, and began traveling at an excessive rate of speed. Officer Landry, who at that time was parked in a service station near the intersection, followed Charles in his police unit, his purpose being to overtake and to arrest him for speeding. Landry continued to pursue the decedent beyond the corporate limits of the town into St. Mary Parish. During this pursuit the vehicles traveled at speeds of up to 90 miles per hour.
When Charles reached his home, more than three miles east of Jeanerette, he turned into his driveway and brought his car to a stop in that driveway near the rear of the house. Shortly thereafter Officer Landry drove into the same driveway, and parked his police vehicle about 20 feet behind the decedent's car. By that time the decedent had gotten out of his car and was walking from that vehicle toward the front porch of his home.
Landry testified that immediately after he arrived he got out of his police car and began walking toward the front porch of the house, shining his flashlight on Charles as he did so, and that he ordered the decedent twice to show his driver's license. He stated that when the second such order was given Charles "went into his right pocket, front pocket, and he came out in a forward motion throwing at me," that the object thrown by Charles passed by Landry's head, and that Landry thereupon drew his pistol and fired. The bullet struck Charles above the left eye, and he died about four hours later as a result of that wound. Landry testified that when he fired his pistol he did not intend to shoot Charles, but that instead he meant to shoot "over his head."
A careful search of the premises was made after the incident occurred, but no knife or other object was found which might have been thrown by the decedent. The trial judge concluded that Charles did not throw anything at Officer Landry, but that he did thrust his hand into his pocket and that Landry interpreted that as a threatening gesture. We agree with that conclusion.
The trial judge held that defendant Landry was negligent in using force far in excess of that which would have been reasonable and necessary, and that Landry thus is liable in damages to plaintiff. He also held that the Town of Jeanerette was free from primary negligence, and that it was not liable under the doctrine of respondeat superior, because the acts of Officer Landry were "ultra vires" and without authority. For these reasons judgment was rendered condemning Landry to pay damages, but rejecting plaintiff's demands against the Town of Jeanerette.
Plaintiff alleges several grounds on which she bases her claim that the Town of Jeanerette was guilty of primary negligence. These grounds, briefly summarized, are that the town employed an unqualified officer, that it knew or should have known that he was incompetent, that it failed to provide training and supervision for that officer, that it allowed the new officer to be on duty alone, that it failed to instruct Landry as to the laws which a police officer must observe, and that it failed to provide him with the proper equipment.
The evidence shows that several years prior to the time he became a police officer for the Town of Jeanerette, Landry served in the United States Army, and was assigned to duty with the Army Stevedores. In that capacity he received training as a guard, which included basic training in the use of firearms, and the handling, assembling and disassembling of weapons. After his discharge from the Army, he joined the local Civil Defense unit and while working with that organization he received instructions in riot control, policing the streets, and the maintenance and firing of weapons. His instructors were officers or representatives of the State Police and the National Rifle Association. His training included both classroom instruction and field instruction, and *798 he served with the Civil Defense for approximately one and one-half years prior to being employed by the Town of Jeanerette.
Landry also rode in a police vehicle with one of the regularly employed officers of the Town of Jeanerette on night shift duty for one to three nights per week for a period of more than one year prior to the time he was employed by the town. One of the officers with whom he regularly rode testified that Landry was an extremely inquisitive person, that he asked many questions about making arrests and the duties of a police officer, and that this officer answered all of Landry's questions to the best of his ability. When the Town of Jeanerette found that it needed an additional police officer, several persons made application for the job. The Mayor and the Board of Aldermen inquired carefully into the qualifications and ability of each of the applicants, and Landry was considered by them to be the best qualified applicant for the job.
We find, as did the trial judge, that the Town of Jeanerette acted reasonably and cautiously in employing Landry, and that the town was justified in assuming that the training which Landry had received was sufficient to qualify him to perform the duties of a police officer for that municipality. We agree with the trial judge that the evidence fails to support plaintiff's contention that Landry was not furnished with suitable equipment and safety devices, or that he was not properly instructed as to his rights, duties and responsibilities as a police officer. Our conclusion is that the Town of Jeanerette was not guilty of any acts of primary negligence which proximately caused the death of plaintiff's husband.
We turn now to the question of whether the trial judge erred in holding that the Town of Jeanerette was not liable under the doctrine of respondeat superior. The town contends that it is not liable in damages for the negligent act of its police officer, Landry, under the doctrine of respondeat superior, because Landry's act in shooting Charles was not committed in the course and scope of his employment and was an ultra vires act for which the Town of Jeanerette may not be held responsible.
All parties concede that Landry, a police officer of the Town of Jeanerette and while on duty as such, began pursuing Charles within the corporate limits of the town for the purpose of arresting Charles for violation of a town ordinance prohibiting speeding. Charles had almost reached the corporate limits of the Town of Jeanerette when Landry began his pursuit. The chase took Landry outside the town limits, which coincided with the Iberia-St. Mary Parish line, to the home of the decedent, which was situated at least three miles from the corporate limits of Jeanerette, within the boundaries of St. Mary Parish. It was at this place that Landry attempted to arrest Charles, and that the shooting incident occurred from which plaintiff's husband died.
The Town of Jeanerette contends that Landry had no authority or jurisdiction as a police officer to enforce the town's ordinances beyond its corporate limits, and that he had no authority to pursue Charles beyond the corporate limits for the purpose of arresting him for a violation of the town's ordinance against speeding. For those reasons, the Town of Jeanerette takes the position that Landry acted outside the course and scope of his employment and that his act in attempting to arrest Charles was an ultra vires act, for which the municipality is not responsible.
An ultra vires act of a municipality is one which is beyond the powers conferred upon it by law. In Louisiana, a municipality has the power to make all police regulations necessary for the preservation of good order and the peace of the municipality. LSA-R.S. 33:401, subd. A (6). This power can be exercised by a municipality only within its own area, and it cannot be exerted elsewhere unless the *799 legislature has granted the municipality the right to exercise its police power outside its corporate limits. City of Shreveport v. Case, 198 La. 702, 4 So.2d 801 (1941); Lentini v. City of Kenner, 252 La. 413, 211 So.2d 311 (1968).
The issue to be decided here, as we see it, is whether or not Officer Landry, under the law of Louisiana in existence on July 31, 1965, could legally pursue one who violated a municipal speeding ordinance in his presence, and within the boundaries of the Town of Jeanerette, beyond the corporate limits of the town and could then legally attempt to arrest the violator outside the corporate limits of that town. The statutes governing "arrest" in July, 1965, were found in LSA-R.S. 15:58 et seq. However, the violation of a municipal ordinance, being a misdemeanor only, is not regarded as a crime under our state law, and the provisions of the Louisiana Revised Statutes concerning "arrest" thus are not applicable to this case. Roberts v. American Employers Ins. Co., Boston, Mass., 221 So.2d 550 (La.App. 3 Cir. 1969). We have been cited to no statutes or jurisprudence which would have authorized Officer Landry to make an arrest outside the corporate limits of the Town of Jeanerette in July, 1965, even though the violation of a municipal ordinance was committed in his presence and within the corporate limits of the Town of Jeanerette, and even though he was in close pursuit of the violator, both within and without the corporate limits of the Town of Jeanerette. In attempting to make such an arrest, therefore, Officer Landry acted as a private citizen only and, as such, he was authorized by law to make an arrest only if a felony had been committed. LSA-R.S. 15:61; See also, Taylor v. American Bank & Trust Co., 17 La.App. 458, 135 So. 47 (La.App.Orl.1931). We agree with the trial judge, therefore, that when Landry attempted to arrest Charles, he was outside the scope of his authority as a police officer of the Town of Jeanerette.
As a general rule, a municipal corporation is not liable in a civil action for damages to persons or property resulting from tortious acts which are wholly outside the powers conferred on the municipality by its charter or other legislative enactment. Since a municipality cannot confer upon its officers and agents lawful authority to represent it beyond its corporate powers, this rule of nonliability applies to ultra vires acts of such officers or agents, whether the acts are directed by the municipality or are done without express direction or corporate sanction. 38 Am.Jur., Municipal Corporations § 582.
In Hoggard v. Mayor, etc., of Monroe, 51 La.Ann. 683, 25 So. 349 (1899), the plaintiffs sued to recover damages for the death of their minor son which allegedly occurred through the negligence of employees of the City of Monroe in their operation of a ferry boat. The suit was defended on the theory that the City of Monroe had no legal authority to operate a ferry boat, and that it could not be held liable for negligent ultra vires acts of its employees in the operation of such a vessel. In maintaining this defense and dismissing the suit of the plaintiffs, our Supreme Court stated:
"* * * (the plaintiffs) urge that it is monstrous to say that the City of Monroe should operate a ferry, freed from all responsibility for the manner in which it was conducted; but this argument involves an assumption of fact, that the `city' did operate such a ferry. It may be true that one was conducted under authority of the common council in the name of the city; but, unless the corporation itself was authorized to establish the ferry, it cannot be said that the act of the council was the act of the city. The council represents the city only in respect to matters which fall within the corporate powers of the corporation. Beyond this, its acts are ultra vires. We think that it is universally recognized as law that acts of the directing body of municipal corporations, covering *800 matters entirely beyond the powers of the corporation, do not bind the latter, though it has been held, if the acts be within the powers, but directed to be done at some particular time, or in some particular manner, departure from such provisions of law would not necessarily make the acts absolutely void. * * *
"* * * There is no matter of public policy favoring the acceptance of the doctrine advanced by plaintiffs in cases like the present. On the contrary, it would lead up necessarily to ruinous public results, and would do away with all the checks which experience has shown to be absolutely essential for the safety and well being of the different communities. * * *"
In Faucheux v. Town of St. Martinville, 120 La. 764, 45 So. 600 (1908), the Hoggard case was cited with approval and the court set forth the following general rule of law:
"The general rule is that a municipal corporation is liable for the trespass and wrongful acts of its officers, expressly authorized or ratified by the governing body of the corporation, if such acts are not wholly ultra vires. * * *"
In West Monroe Mfg. Co. v. Town of West Monroe, 146 La. 641, 83 So. 881 (1920), the Louisiana Supreme Court stated that the following facts must be alleged for liability in tort to attach to a municipality:
"`(1) Fact showing that the defendant is a municipality;
(2) that defendant had power to do the act complained of, in other words, that it was not ultra vires;
(3) that the agent or employe of the town was exercising a legitimate corporate duty;
(4) that the act was not one in the performance of a governmental as distinguished from a private function; and
(5) that it was wrongful.'"
In State ex rel. Shell Oil Co. v. Register of State Land Office, 193 La. 883, 192 So. 519 (1939), the Louisiana Supreme Court quoted from Corpus Juris with approval, as follows:
"`Although a municipality or other governmental agency cannot be estopped by its ultra vires acts, there is nevertheless a broad distinction to be observed between an irregular exercise of a granted power, and the total absence or want of power; and the rule is that it may be estopped, as right and justice may require, where that act or contract relied on to create the estoppel was within its corporate powers, although the method of exercising the power was irregular or unauthorized; * * *'"
In Acme Lumber Co. v. Board of Commissioners of Port of New Orleans, 137 La. 899, 69 So. 739 (1915), the Louisiana Supreme Court held that a municipal corporation or board is responsible for the acts of its authorized representatives within the scope of their authority.
In view of these authorities and in view of the fact that Landry acted outside the scope of authority granted to him by the Town of Jeanerette, and outside the scope of authority which the town could legally exercise, our conclusion is that the Town of Jeanerette cannot be held liable in damages to plaintiff for the negligence of its employee under the doctrine of respondeat superior. See, City of Dallas v. Smith, 130 Tex. 225, 107 S.W.2d 872 (1937); and City of Coral Gables, Florida, v. Giblin, 127 So.2d 914 (Fla.1961).
A judgment of $10,000.00, plus funeral expenses of $895.00, was awarded by the trial judge to plaintiff, individually and as Natural Tutrix for her children. On this appeal plaintiff asks that the amount of this award be increased.
The decedent, Charles, was 24 years of age at the time of his death. He is survived *801 by his widow, then 22 years old, and by five children, issue of that marriage. One of these five children had been conceived but was unborn at the time of Charles' death. The decedent and his wife enjoyed a happy married life. He was a laborer and had been employed pretty regularly prior to his death, with an average income of about $200.00 per month. Charles lived for four or four and one-half hours after he was shot, and we assume that he consciously suffered some pain during that time.
The amount of the award made by the trial court is grossly inadequate when compared to awards made in other similar cases. The trial judge, of course, was aware of that fact when the award was made, but he considered the well settled rule in Louisiana that in assessing general damages, a court should take into consideration the ability of the defendant to pay the judgment. See Monger v. McFarlain, 204 So.2d 86 (La.App. 3 Cir. 1967) and cases cited therein.
Evidence taken at the trial shows that defendant Landry was earning $285.52 per month as a policeman for the Town of Jeanerette at the time of Charles' death. After the shooting incident, Landry was suspended from the police force but after his suspension he worked for the city in its water department for a short time. He then resigned and sought employment elsewhere. The record does not reveal what type of employment Landry secured after his resignation. Landry testified that he owned a small house and lot which were encumbered by a first and second mortgage; that he had no money in the bank; and that he was purchasing several appliances with installment payments. He testified that he and his faimily, which also includes minor children, live "from check to check."
We agree that defendant Landry is not financially able to pay a substantial judgment. Nevertheless, we feel that the amount of the award should be increased. Considering all of the circumstances presented, we think a fair award for pain and suffering and other general damages would be $10,000.00 to plaintiff individually, and an additional $10,000.00 to her, as Natural Tutrix for her minor children, this last figure representing an award of $2,000.00 for each child. Plaintiff also is entitled to recover $895.00 for funeral expenses; and the sum of $15,000.00 which we fix, conservatively, as loss of future support.
In view of the disposition which has been made of other issues in the case, it is unnecessary for us to determine whether the trial judge erred in refusing to permit plaintiff to file a second supplemental and amended petition naming the liability insurer of the Town of Jeanerette as an additional defendant. Plaintiff sought to file such a pleading after the case had been tried on its merits and reasons for judgment had been assigned by the trial judge, but before the formal judgment had been signed.
For the reasons herein assigned, the judgment appealed from is amended by increasing the amount of the award from $10,895.00 to the sum of $35,895.00. In all other respects the judgment of the district court is affirmed. The costs of the appeal are assessed to defendant-appellee, Nolan J. Landry.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.